March 17,
1938.

## OPINION OF THE JUSTICES.

March 4, 1938, the Governor and Council adopted the following resolution:

"Whereas the Commissioners of the several counties have represented to the Governor that the operation of Public Laws, Chapter 105 as amended by Laws of 1933, Chapter 142 will create such a crisis in the financial affairs of the counties as to require the calling of a special session of the legislature, and

Whereas doubt exists as to the interpretation of said statute and it is desired that this doubt shall be removed, now therefore, be it resolved on motion duly made and carried by the Governor and Council that the opinion of the Justices of the Supreme Court be requested upon the following question upon this solemn occasion.

After June 1, 1938 are the counties required to relieve all paupers living within said counties, who have not had their domicile in any town in this state for five consecutive years previous to said date without receiving any public aid other than old age assistance."

The following answer was returned:

*To His Excellency the Governor and the Honorable Council:*

As justices of the Supreme Court, we furnish this opinion upon your resolution of March 4.

We understand your inquiry to relate only to relief for paupers which is not directly furnished by the State. Under certain legislation (Laws 1937, *c.* 202) appropriation of state funds is made for assisting certain classes of persons who may be paupers in addition to those of old age. So far as such relief is furnished, the burden of expense therefor on either county or town is determined by the act, and no question in respect thereto has been considered by us.

With your inquiry thus limited, we answer it in the negative.

The act of 1933 (Laws 1933, *c.* 142) changes the requirements for acquiring a settlement not derivatively obtained. It substitutes domicile in a town for five consecutive years (*Ib., s.* 1) for a prescribed term of residence and the payment of certain taxes (P. L., *c.* 105, *s.* 1, *Par.* IX, *s.* 9). But by such change it does not in terms or by implication declare the loss of a settlement already gained before its passage. The express enactments (*Ib., ss.* 2, 3) for loss either by abandonment of domicile for five consecutive years or by assistance to one as a pauper for five consecutive years after the passage of the act may not be exclusive. Abandonment for less than five years by removal from the State within that period is to be held loss of settlement. But the provision for a new method of gaining a settlement is not a declaration that accrued settlements shall be lost. While it is intended by the act, though not as clearly stated as might be, that any settlement gained either by the repealed or by the repealing law, shall be lost in the ways the act specifically provides, a purpose in the act that the new method of gaining a settlement imposes any loss of an existing settlement is not found. The lessened requirement of time of domiciliary residence and the omission of the condition of paying any taxes which feature the 1933 act, thus making it simpler and less difficult to acquire a settlement, necessarily indicate a legislative policy to increase the burden of town relief for the benefit of the counties. While this policy is in some measure modified by the provisions of the act for new ways of loss of settlement, a construction of the act extending and amplifying the limitations of policy would be legislation. Such further limitations would be in derogation of the policy, to be permitted only if the language of the act were too clear and free from doubt to read it otherwise.

Former cases on kindred legislation are not in point. An act (Laws 1841, *c.* 605) declared that no person should thenceforth have a settlement unless under some act passed since 1795. This explicitly ended all settlements depending upon legislation enacted prior to 1796. A similar act (Laws 1861, *c.* 2482) required that a settlement must have been gained after 1819 and then by other than certain methods, for a town to be chargeable for a pauper's support. This necessarily abolished all settlements gained before 1820 and since then by the specified methods. The 1933 act repeals the former law for the direct acquirement of a settlement, but it is silent in passing upon settlements already gained under the former law.

The repeal of a statute renders it thenceforth inoperative, but it does not undo or set aside the consequences of its operation while in force unless such a result is directed by express language or necessary implication. A status established in a manner which becomes proscribed is not lost by the mere fact of the proscription.

Even, as here, where no question of vested rights is involved, the presumption is that the repeal of an act does not invalidate the accrued results of its operative tenure. To undo such results by a repeal is to give it retroactivity, and based upon elemental principles of justice a rule of construction avoids that effect if the language of the repeal does not clearly require it. By the repeal of the law providing for a certain method of acquiring a settlement the legislature did not say that a perfected settlement under the law should be destroyed. It went no farther than to say, by amendment, how a direct settlement must be thenceforth gained. The repeal may have rendered ineffective a partially gained settlement under the repealed law and left it with no standing, since the repealed law no longer had operative efficiency to complete the settlement, but its efficiency while operative was unaffected by the repeal, and full compliance with its terms while it was in force produced a status of settlement which the repeal did not destroy.

A view that a settlement gained prior to the amending act is lost by any relief furnished during the five year period ensuing its passage, because a settlement cannot be gained under the act if assistance is given during the period, is supported only by confused and unacceptable reasoning. It concedes the continuance of the settlement until relief is furnished, but then terminates the settlement, because the relief destroys the continuity necessary for gaining a new settlement. The act provides that a settlement shall be lost by relief furnished only when the relief has been given during five consecutive

years, and to hold that relief furnished in any one of them produces a loss of settlement would not pay even scant respect to the legislative will. To say that the act provides that a settlement gained at the time of its passage is lost by any relief for five years thereafter but after the period only by relief furnished in five consecutive years is to ascribe to the legislature inability to use appropriate language to express its purpose. But there is no disclosure of an intent that to maintain accrued settlements they should go through a probationary term of compliance with the new requirements for gaining a settlement, with the ultimate result that they should become replaced by settlements gained under the new method.

In concluding summary, we are of the opinion that a settlement in good standing when the 1933 act was passed is not lost by subsequent relief to the pauper unless the relief is extended from time to time during a consecutive five year period.

JOHN E. ALLEN.
THOMAS L. MARBLE.
OLIVER W. BRANCH.
PETER WOODBURY.
ELWIN L. PAGE.

March 17, 1938.

# INDEX

## ACCORD AND SATISFACTION.

A payee, who receiving a check offered in full settlement, has it certified but fails to notify the drawer that the check is not accepted on the terms of the offer is estopped by his conduct to deny accord and satisfaction, and evidence that the payee did not intend to accept those terms is immaterial. *C. & R. Construction Co.* v. *Manchester*, 506.

Where a check is tendered in full satisfaction, the payee is estopped to deny an accord and satisfaction if he accepts the check and fails thereupon to do what the ordinary man would do to inform the drawer of his non-acceptance of the conditions on which the check was tendered. *Ib.*, 506.

## ACTIONS: PARTIES TO ACTIONS.

### By Town.

An action by a town must be brought by its selectmen, not in their own names but in that of the town. *Stone* v. *Cray*, 483.

### Election of Remedies.

There can be no election between alternative remedies unless both are available. *Davis* v. *Company*, 520.

## AGENCY.

### (*See also Master and Servant* 2.)

### 1. Actual Authority: How Proved.

On the issue of agency, the testimony of the alleged agent is competent. *Carrol* v. *Dane*, 233.

Certain evidence justified the conclusion that the defendant owned a truck which was so negligently driven by his agent on his business that a collision was caused with the plaintiff's automobile. *Ib.*, 233.

A telephone report of a motor vehicle collision made by the driver of one of the vehicles to an unknown person will not permit the inference that the driver was the agent for the defendant if no evidence identifies him as the unknown person. *Alexander* v. *Todd*, 365.

### 2. Extent of Authority: Apparent Scope.

The act of an agent is not within the apparent scope of his authority unless the conduct or practice of the principal has been such as to induce reasonable reliance on such act. *Hartford Accident &c. Co.* v. *Lougee*, 222.

Apparent authority is not established merely by what the principal has done or omitted to do; it must be shown that his conduct was such that a reasonable man would be misled thereby. *Ib.*, 222.

While a principal is bound if the agent does what agents in the same line of business are accustomed to do, the customary practice of one insurance agent or insurer is not enough to show a general practice among agents. *Ib.*, 222.

A special agent does not have the apparent authority of a general agent merely because he is also a general agent for another principal in the same line of business. *Ib.*, 222.

The apparent authority of a general agent cannot be shown by a practice not shown to be customary on the part of general agents. *Ib.*, 222.

An alleged principal is not answerable for what an agent does in excess of his rightful authority merely because of the agent's pretense to an authority not in fact bestowed upon him. *Ib.*, 222.

A person dealing with an agent is put upon inquiry to ascertain his authority. *Ib.*, 222.

Certain evidence did not warrant the finding that reliance was reasonably placed upon the assertions of an agent as to the course of business authorized by his principal and his own right to insure for an indefinite period without delivering a policy. *Ib.*, 222.

3. RESPONDEAT SUPERIOR; WHERE INAPPLICABLE.

The owner of a truck is not liable upon the principle of *respondeat superior* for its negligent operation by one to whom the driver had no authority to delegate the performance of his duty. *Jesukevich* v. *Laporte*, 242.

4. RATIFICATION BY PRINCIPAL.

On the question whether a principal has ratified the action of an alleged agent in making a contract to purchase, evidence was properly received to show that the alleged principal never saw the instrument and did not understand its true nature but was misled by the alleged agent's misrepresentation as to its purport. *Barclay* v. *Club*, 500.

Where in such case the principal has on no other occasion acquiesced in unauthorized acts of the alleged agent no duty is upon the principal to speak concerning a matter of which he is justifiably ignorant and where there was nothing to warn a reasonable man that the statement on which he relied was untrue. *Ib.*, 500.

5. PRINCIPAL CHARGEABLE WITH AGENT'S KNOWLEDGE.

A railroad is chargeable with the knowledge of members of a train crew that owing to a detour the traffic over a grade crossing had greatly increased. *Carbone* v. *Railroad*, 12.

AGREED CASE.

(*See Procedure 14-d.*)

ALIENATION OF AFFECTIONS.

(*Damages for, see Damages 3.*)

# AMENDMENT.

### 1. OF DECLARATION.

An amendment of a declaration in respect to the date of an accident was not an abuse of discretion, though no continuance was granted, where the defendant previously had full information as to the true date or opportunity to obtain it. *Davidson* v. *Corporation*, 535.

### 2. OF SPECIFICATION.

The question whether a specification was properly permitted to be amended by adding items of interest is discretionary with the trial court; whether such items are recoverable depends on facts to be later found. *Arcadia Knitting Mills* v. *Company*, 188.

### 3. BY SUBSTITUTING A DIFFERENT PERSON AS DEFENDANT.

The question of amending a writ to substitute a different defendant will not be considered if no recovery against him would be possible. *Stone* v. *Johnson*, 329.

Such an amendment will not be made if no remedy could be given. *Wallace* v. *Brown*, 561.

# ANIMALS.

### 1. LIABILITY OF KEEPER OF DOG.

Under P. L., c. 150, ss. 23, 24, giving a remedy for damage occasioned by a dog "not owned or kept by" the person damaged, the word "kept" implies more than a mere harboring of the animal for a limited purpose or time; and a person becomes liable as a "keeper" only when, either with or without the owner's permission, he undertakes to manage, control or care for a dog in the manner of dog-owners in general. *Raymond* v. *Bujold*, 380.

One who permits the casual presence of a dog upon his premises is not its "keeper" if he merely feeds or shelters it. *Ib.*, 380.

One who retains another's lost dog in his possession for only a limited time and only for the purpose of delivering it to its owner on demand, exercising no dominion over the animal except for that purpose, is not a "keeper" within the meaning of the statute and is entitled to recover for injuries caused to his own cattle by the dog, in an action against the owner under P. L., c. 150, ss. 23, 24. *Ib.* 380.

### 2. SLAUGHTER HOUSES.

A regulation by a board of health requiring notice to the local health officer whenever animals are to be killed at any slaughterhouse in the town is reasonable and valid and applies to the killing of all animals whether intended to be sold locally or otherwise. *State* v. *Dickstein*, 546.

# ARBITRATION.

*(By Architect or Engineer, see Contracts 2-e.)*

## WAIVER OF AGREEMENT.

A provision for arbitration in a contract is waived if the parties after action is brought submit to a trial upon the merits. *N. E. Redlon Co.* v. *Corporation,* 137.

A party claiming a right to an arbitration should have that right determined as a preliminary issue before trial on the merits. *Ib.,* 137.

## ASSIGNMENT.

*(Of lease, see Landlord and Tenant 4.)*

### ESTOPPEL OF ASSIGNOR TO ASSERT HIS PRIOR ASSIGNMENT AGAINST HIS LATER ASSIGNEE.

One who having assigned stock to A subsequently assigns to B such rights as the assignor has in the same stock is estopped to assert that his prior assignment is effective to render his later assignment void. *Moreau* v. *Loveren,* 470.

## ATTORNEYS.

### 1. CHAMPERTY AND MAINTENANCE.

The rule against champerty and maintenance is not here in force except in those cases where it is found as a fact that litigious strife is sought to be promoted, or the contract is oppressive and unconscionable. *Markarian* v. *Bartis,* 370.

The mere fact that an attorney's fees are to be contingent upon his success and are to constitute a share of the proceeds recovered does not offend the public conscience or invalidate such agreement. *Ib.,* 370.

An attorney, who on honest and reasonable grounds has advised the bringing of a suit and has agreed for a contingent fee of a percentage of the amount recovered, is entitled to the value of his services if discharged before termination of the suit. *Ib.,* 370.

### 2. COUNSEL FEES.

Upon a motion for a rehearing on the ground of mistake, counsel fees commensurate with the additional services required by the rehearing may be awarded to the opposite party as terms of granting the motion. *Barclay* v. *Club,* 500.

## BANKS.

### INSOLVENCY OF BANK: DUTY TO DISCLOSE THE FACT BEFORE RECEIVING A DEPOSIT.

If the treasurer of an insolvent bank owes the duty of disclosing its insolvency to one depositor he owes the like duty to all. *Emerson* v. *Bank,* 339.

## CARRIER.

*(See also Railroads.)*

### REGULATION OF RATES.

The rates of fare which may be charged by a common carrier are subject to state control. *State* v. *Guertin,* 126.

## CHAMPERTY AND MAINTENANCE.

(*See Attorneys* 1.)

## CHARITY.

(*See also Taxation* 2.)

An institution organized and conducted to perform some service of public good or welfare, with no pecuniary profit to its officers or members, and with no restrictions which confine benefits to them, is a charity under the statute. *Young Women's Christian Ass'n* v. *Portsmouth*, 40.

The Young Women's Christian Association of Portsmouth having activities of social and welfare service in various forms and giving aid to an indefinite number of the public in material, recreational, social, and cultural ways, without restriction of its benefits to its members, and using its income and business profits for its benevolent purposes, is a charitable institution. *Ib.*, 40.

Such an institution may engage in business without loss of its charitable character so long as its property is used for its charitable purposes and the profits from a limited business use thereof are devoted to those purposes. *Ib.*, 40.

A deed of gift conveying certain land and the buildings thereon to a city for use as a public library "and for no other purpose," established a public charity of which the city is trustee within the provision of P. L., c. 42, s. 18. *State* v. *Corporation*, 538.

## CONFLICT OF LAWS.

### 1. PRESUMPTION AS TO TERRITORIALITY.

The laws of a state are presumed as intended for the government only of those persons and things within its territory. *Proctor* v. *Frost*, 304.

### 2. TORTS.

Though by the law of the forum a wife may recover for the tort of her husband the *lex loci delicti* determines whether she may recover against him for his tort committed in another state. *Miltimore* v. *Company*, 272.

Under Massachusetts law, though a wife is not entitled to recover for her husband's tort she may recover against his employer for the husband's gross negligence in the operation of an automobile in which she was riding as a guest, and whereby she was injured. *Ib.*, 272.

Under Massachusetts law the mere fact that a guest passenger falls asleep does not constitute contributory negligence. *Ib.*, 272.

### 3. CONTRACTS.

The laws of a state are presumed as intended for the government only of those persons and things within its territory. *Proctor* v. *Frost*, 304.

The purpose of P. L., c. 288, s. 2 providing that "no contract . . . by a married woman as surety . . . for her husband . . . shall be binding on her" was not to regulate the transfer of New Hampshire real estate. *Ib.*, 304.

Nor to affect the capacity of married women outside of New Hampshire to make such contracts and conveyances but to protect those in New Hampshire from making improvident contracts as surety for their husbands. *Ib.*, 304.

#### 4. NULLITY OF MARRIAGE.

The law governing the right to a decree of nullity of marriage is the law which determined the validity of the marriage with respect to the matter on account of which the marriage is alleged to be null. *Foster* v. *Foster,* 376.

#### 5. PERSONAL PROPERTY MORTGAGES.

Under Massachusetts General Laws, c. 255, s. 5 requiring that notice of intention to foreclose a mortgage of personal property be given "to the mortgagor or to the person in possession of the property claiming the same," a mortgage is not invalidated by a clause that notice may be given to the mortgagor "or his representatives." *Auto Owners' Finance Co., Inc.* v. *Coleman,* 356.

#### 6. SMALL LOANS: INTEREST.

Under Massachusetts General Laws, c. 140, s. 96 providing that on a loan of not over $300 the "interest or expenses" shall not exceed a certain percentage of the loan is not violated where an automobile mortgaged to secure the loan was required by the lender to be insured against fire and theft at an expense of six dollars, which sum the lender retained out of a loan of three hundred dollars. *Auto Owners' Finance Co.* v. *Coleman,* 356.

In such cases all of three hundred dollars was in fact loaned; the borrower's purchase of the insurance was made out of the proceeds and neither lessened the amount of the loan nor was an "expense . . . charged or received" for making the loan within the meaning of s. 103. *Ib.,* 356.

### CONSPIRACY.

The gist of the action for conspiracy is not the unlawful or wrongful agreement and combination of the defendants but their wrongful acts in pursuance thereof and the injury caused by such acts. *Daniels* v. *Barker,* 416.

In an action for conspiracy to alienate affections an instruction that liability depended upon the severance of marital relations is error; for liability would arise if alienation of affections was caused, though without severance of marital relations. *Ib.,* 416.

### CONSTITUTION CITED

| | | |
|---|---|---:|
| U. S. Constitution, XIV Amendment | | 56, 431 |
| Constitution of N. H. | Bill of Rights | 431 |
| | Art. 3 | 58 |
| | 4, 5 | 56, 57 |
| | 10 | 321 |
| | 12, 19 | 56 |
| | 35 | 260 |

### CONSTITUTIONAL LAW.

#### 1. POLICE POWER.

Where any fair reason can be assigned for bringing legislation within the purview of the police power the question of the justice of the legislation is only for the legislature. *Stone* v. *Cray,* 483.

The prosperity of a community may depend upon convenience and expediency in the arrangement, allocation and layout of the diversified uses of the property therein by zoning ordinances.  *Ib.*, 483.

A reasonable regulation by an administrative board in aid of its exercise of a police power is valid.  *State* v. *Dickstein*, 546.

A regulation by a board of health requiring notice to the local health officer whenever animals are to be killed at any slaughterhouse in the town is reasonable and valid and applies to the killing of all animals whether intended to be sold locally or otherwise.  *Ib.*, 546.

In a project of the water Resources Board for the storage of water, a primary purpose to aid private industry is not necessarily proved merely because no present public need exists for the increased production of electric energy or because the potential need of it in a remote time is slight.  *Conway* v. *Board*, 346.

## 2. EQUALITY OF PERSONS: LEGISLATIVE CLASSIFICATION.

Legislative classification to be constitutional and not discriminatory must be based upon some substantial foundation, and must not be arbitrary but germane to the purpose of the law.  *Welch Company* v. *State*, 428.

A state in the interest of highway safety may not only classify carriers for hire from carriers in general and apply to the former regulations from which the latter are exempt, but may also create classifications among carriers for hire based upon the nature and extent of their use of the highways.  *Ib.*, 428.

One of the purposes of Laws 1933, *c.* 106; *Ib.*, *c.* 169 being to protect the users of highways from the operation of trucks by fatigued drivers, those truck-drivers who transport for hire may be classified separately from those who transport goods for themselves or for their employers, and no discrimination results if the former class are subjected to regulations limiting the drivers' hours of continuous work.  *Ib.*, 428.

The exemption in Laws 1933, *c.* 106, *s.* 4; *Ib.*, *c.* 169 of "motor vehicles not principally engaged in the transportation of property for hire" may be justified by the legislature's judgment that excessive hours of employment on such vehicles may be of such infrequent occurrence as to render regulation unnecessary.  *Ib.*, 428.

The exemption in Laws 1933, *c.* 106, *s.* 4; *Ib.*, *c.* 169 of local operators may be justified on the ground that the driving periods of such operators must be frequently interrupted, and fatigue does not develop as rapidly or become so great as in the case of a driver subjected to the monotony incident to long and uninterrupted trips.  *Ib.*, 428.

A zoning ordinance is not discriminative because it permits the continuation of existing structures and conditions while the creation of new structures or conditions of the same type is prohibited.  *Stone* v. *Cray*, 483.

A statutory provision that a motor vehicle may not be operated upon the public highways until adequate provision has been made for compensation to persons injured wrongfully thereby is a valid law; and the requirement of insurance or security may be made to depend upon contingencies.  *Rosenblum* v. *Griffin*, 314.

Laws 1937, *c.* 161 requiring the security to be furnished by the owner or operator of a motor vehicle involved in an accident without regard to his fault, though discriminating among innocent persons as between those escaping and those

not escaping accident, is not unconstitutional as an unequal regulation of a guaranteed right but is merely the definement of one of the conditions or terms upon which the privilege of operating vehicles on the highways may be given or withheld. *Ib.*, 314.

Under that statute there is equality of treatment because every licensee voluntarily consents as a condition of his license that if he meets with an accident his further right to operate shall depend upon his having or furnishing security for any liability arising out of that or any future accident. *Ib.*, 314.

Classification creates inequality unless it reasonably promotes a matter of the general welfare. *Ib.*, 314.

Laws 1937, *c.* 208, *s.* 2 creates an arbitrary classification by requiring proof of financial responsibility to be furnished by applicants for the registration of only those motor vehicles which are under mortgage or lien or when part of their purchase price is unpaid. *Ib.*, 314.

### 3. UNREASONABLE SEARCH.

The right to be secure against unreasonable search and seizure may be voluntarily surrendered or waived. *Manchester Press Club* v. *Commission*, 442; *Pulaski* v. *Commission*, 559.

Under Laws 1934, *c.* 3, regulating traffic in intoxicating liquors and authorizing any member of the liquor commission or any of its special agents to enter at any time any place where liquor is sold, a regulation of the commission is valid whereby a licensed club is required to furnish to the commission's law enforcement department a key for entrance into the premises, at any time. *Ib.*, 443; *Ib.*, 559.

The regulation is not a violation of the constitutional guaranty against unreasonable search, for the acceptance of the license by the club is the acceptance of an obligation to submit to the terms and conditions which the State attaches to the privilege to sell liquor conferred by the license. *Ib.*, 442; *Ib.*, 559.

The statute, however, did not authorize a regulation which requires a licensed club to furnish a key of its premises to the local police for entrance at any time into the club's premises. *Ib.*, 442; *Ib.*, 559.

### 4. RETROACTIVE REGULATION.

When a license is granted, subject to such rules and regulations as may be imposed, the adoption of a regulation after the grant is not retroactive in relation to the license merely because the regulation affects subsequent conduct under the license; but is a valid exercise of the police power. *Manchester Press Club* v. *Commission*, 442.

### 5. INTER-STATE COMMERCE.

Reasonable non-discriminatory state action under the police power may indirectly affect interstate commerce, but only until Congress takes action which covers the field. *Welch Company* v. *State*, 428.

The operation of Laws 1933, *c.* 106, *s.* 8; *Ib.*, *c.* 169 was not suspended by the passage of the federal Motor Carrier Act until, as provided thereby, the Interstate Commerce Commission established "requirements with respect to ... maximum hours of service of employees." *Ib.*, 428.

After a motor vehicle accident in this state, a foreign corporation owning the truck involved therein, upon notification filed certain proof of financial responsibility for accidents in this state pursuant to Laws 1937, *c.* 161, *s.* 6, which was rejected by the Commissioner of Motor Vehicles.

*Held* that a requirement of insurance approved by the Commissioner of Motor Vehicles against liability for the results of operations in a foreign state demanded by him under Laws 1937, *c.* 161, *ss.* 1, 6 is an unconstitutional attempt to regulate interstate commerce. *University &c. Express* v. *Griffin*, 395

The subject of the financial responsibility of interstate motor-carriers having been fully dealt with by the federal statute and the rules promulgated thereunder by the Interstate Commerce Commission, supplementary as well as conflicting regulations of the same subject by the states are precluded by the Federal Constitution. *Ib.*, 395.

### 6. DELEGATION AND EXERCISE OF LEGISLATIVE POWER.

Though Laws 1933, *c.* 106; *Ib.*, *c.* 169 does not in terms give the Public Service Commission authority to prescribe rules and regulations for the carriers to which it applies, the legislative intention is to commit the enforcement of its provisions to the commission by its promulgation of appropriate rules and regulations. *Welch Company* v. *State*, 428.

The commission's rule requiring each driver to keep with him while on duty a record of his hours of service on prescribed forms and that his employer shall keep copies of such records and file the same monthly with the commission is not an unconstitutional usurpation of legislative power. *Ib.*, 428.

The power to license and regulate "hackney coaches, cabs and carriages" conferred upon "city councils" by P. L., *c.* 54, *s.* 12, PAR. VI is not a delegation of legislative power to the executive department of a city government where an ordinance expressly retains in the Board of Mayor and Aldermen all control over the issuance of licenses. *State* v. *Guertin*, 126.

Laws 1934, *c.* 3 is not an unconstitutional delegation of legislative power, for the act prescribes the general powers and duties of the State Liquor Commission and defines the sphere of their action with substantial specification. *Manchester Press Club* v. *Commission*, 442; *Pulaski* v. *Commission*, 559.

The statutes creating the Water Resources Board do not delegate the power of appropriating money; for the act of 1935, *c.* 121, *ss.* 17, 18 limits the amount of money to be supplied by or on the credit of the State. The revenues from the projects are the property of the board to be used for construction and maintenance. *Conway* v. *Board*, 346.

Nor are the enactments invalid as being a delegation of primary legislative power; for a policy is declared, and a standard is prescribed for the administration of the law by discretionary functions, which though broad are auxiliary to the administrative authority of the Water Resources Board. *Ib.*, 346.

### 7. ACTS OF LEGISLATURE: VALIDITY OF, NOT DEPENDENT ON MOTIVE.

The motives of a legislative body are not subject to judicial inquiry in passing on the validity of its action. *Stone* v. *Cray*, 483.

### 8. STATUTE UNCONSTITUTIONAL IN PART ONLY.

The unconstitutionality of a particular provision of a law does not otherwise affect it unless the result is to give an unintended meaning to the law or unless its remaining provisions were not intended to remain operative without it. *Rosenblum* v. *Griffin*, 314.

### 9. ACTS TO AID PRIVATE ENTERPRISE.

The enactments creating and empowering the Water Resources Board are not provisions for the aid of private business enterprises but for the general welfare, although incidentally benefiting certain individuals, and hence are constitutional. *Conway* v. *Board*, 346.

### 10. STATE NOT A PARTY TO SUIT AGAINST ITS OFFICERS TO RESTRAIN ACTION UNDER VOID STATUTE.

When a law is challenged as unconstitutional, the claim is that the law is void and hence that no law has been enacted; when in such case suit is brought to restrain the agents of the State from putting the void legislation into effect the proceeding is not one to which the State is a party. *Conway* v. *Board*, 346.

## CONTRACTS.

*(Accord and satisfaction, see Accord and Satisfaction.)*

*(See also Conflict of Laws)*

### 1. CONSTRUCTION.

#### a. General Rules.

In the construction of contracts effect is to be given, if reasonable, to all the clauses of a contract. *Shelby Mutual &c. Co.* v. *Lynch*, 510.

A special clause of a contract will qualify a general one. *Ib.*, 510.

In a purely bilateral transaction the private sense of one party cannot be imposed upon the other party. *Ib.*, 510.

The interpretation of a written agreement involves a consideration of all the evidentiary facts and circumstances bearing thereon. *Bernardi Greater Shows, Inc.* v. *Railroad*, 490.

Hence the construction put upon such an agreement by the Supreme Court in answer to a question transferred by the Presiding Justice in advance of trial and upon the plaintiff's declaration may not be final or conclusive. *Ib.*, 490.

The meaning of the language of a written agreement having been established, an actual intention of a different meaning cannot be shown except in a suit to reform the document; and hence a letter written by one party subsequent to the making of the instrument can neither add to nor diminish the force of the terms definitely expressed therein. *Barclay* v. *Club*, 87.

#### b. Contract to Sell Distinguished from Option.

In an option to purchase real estate the owner agrees to sell, if the holder of the option chooses to buy, but the latter is not bound to so elect. *Barclay* v. *Club*, 87.

An agreement on valid consideration whereby the owner of land promised to sell it for a stipulated price and to execute a deed therefor when demanded by the

purchaser, who also promised to pay the said price, is not a mere option to purchase but a contract of purchase and sale.   *Ib.*, 87.

#### c. Certain words construed.

A statement by the defendant that "he wanted to square the thing up" was too vague, under the circumstances, to justify the inference that the defendant was agreeing to pay all damages rather than expressing a willingness to compromise.   *Alexander v. Todd*, 365.

### 2. Building or Construction Contracts.

#### (*See also Arbitration.*)

#### a. Trade Terms.

A building contract contained the provision that "materials . . . described in words which . . . have a well-known . . . trade meaning shall be held to refer" thereto; also a further provision making the architect "the interpreter of the conditions of the contract and the judge of its performance."   The latter provision does not permit the architect to interpret the document arbitrarily nor to adopt as the canon of construction what he understood to be the meaning of a specified material which had a well-known trade meaning different from his own. *N. E. Redlon Co. v. Corporation*, 137.

In such case, the parties having expressed their meaning by the use of the trade term in their written contract, parol evidence is not admissible that they understood something different.   *Ib.*, 137.

#### b. Stipulation Giving Architect Authority to Make Minor Changes in Work.

Where a contract gives authority to the architect "to make minor changes in the work" the change authorized must be proved to have been a minor one. *N. E. Redlon Co. v. Corporation*, 137.

Where by a building contract the architect has "authority to make minor changes in the work not involving extra cost" &c., the substitution of ledge chips for gravel in making a fill was rightly authorized by him.   *Ib.*, 137.

#### c. Right of owner to claim adjustment of price in case of change without his consent.

Where a contract required that in a basement "there will be at least a six inch bed" of gravel under the concrete and this was not complied with, a finding that the owner had suffered no special damage from the deficiency is not decisive upon his right under such contract to claim an adjustment for a change to which his consent was not given or as to which he may have had no knowledge. *N. E. Redlon Co. v. Corporation*, 137.

#### d. Other provisions as to changes and alterations.

A provision in a building contract that changes or alteration of materials might be made, and that "the amount to be added or deducted for such change is to be fixed by a schedule of prices previously . . . agreed upon," showed that where by mutual agreement the work was enlarged or diminished the basis of any

change was at the same time to be agreed upon and the party to be benefited by any adjustment due to such change was required to make his claim when he gave consent to the change. *N. E. Redlon Co. v. Corporation*, 137.

### e. *Condition as to reference of questions to architect or engineer.*

If by a contract questions as to estimates, quality of materials, continuity of performance of work, extension of time of its performance or suspension of work without compensation for the delay, are referred to the decision of an architect or engineer, his judgment, if fairly and honestly exercised, is final in the absence of clear mistake on his part as to material facts. *Ferguson Company v. Keene*, 410.

A contract contained a provision that "construction work may be suspended at any time ... or for any ... reason if deemed necessary or advisable by the engineer ... without additional compensation to the contractor." The engineer was also constituted an adjudicator with power to decide all questions "relative to the intent and fulfillment" of the contract. The plaintiffs' work of laying pipe being suspended on the direction of the engineer in consequence of the failure of another contractor to complete a pumping station with which the plaintiffs were required to connect pipes, they were entitled to no damages for suspension of the work where the engineer did not act capriciously or in bad faith but acted reasonably in permitting the work on the pumping station to be continued by the same contractor after he had been delayed by adverse conditions of soil, materials and weather. *Ib.*, 410.

### 3. ASSIGNMENT OF CONTRACTS.

A prohibition in a contract of the assignment of rights thereunder is for the benefit of an original party and does not prevent the assignee from acquiring rights against the assignor under the assignment. *Hosmer v. Federico & Son*, 378.

### 4. ILLEGALITY.

Where parties have engaged in an undertaking for a wrongful purpose (*e.g.* a conveyance to defraud creditors) equity does not give the grantor relief from the legal incidents of the transaction. *Record v. Company*, 1.

## CORPORATION.

### (*Receiver, see Receiver.*)

### 1. CHARTER, HOW FAR AFFECTED BY SUBSEQUENT GENERAL LEGISLATION.

Where the special law and the later general law both deal with the same subject-matter but in different ways and for different purposes there is no implied repeal of the former by the latter. *State v. Railroad*, 59.

A prior legislative regulation of a utility is not repealed by a delegation of legislative regulatory power but remains in force where no more appears than that the body invested with such power may administer the prior regulation. *Ib.*, 59.

Where a special charter is followed by general legislation on the same subject which does not in terms or by necessary construction, repeal the particular grant or regulation, the two are to be deemed as standing together, one as the general law of the land, the other as the law of the particular case. *Ib.*, 59.

## 2. ACTS OF OFFICERS AND DIRECTORS.

The conclusion that the signer of a check signed it as president of a corporation was sustainable where the signer had signed other checks in the same name as an officer of the corporation. *Moreau* v. *Loveren*, 470.

A contract purporting to be a purchase of property by a corporation is not binding upon it where the directors, being misinformed by one of their number, who was without any general power to make purchases that the contract was merely an option to purchase, voted "to uphold" it subject to the approval of the stockholders. *Barclay* v. *Club*, 500.

In such case a vote of the stockholders to ratify the action of the directors is not an adoption of the instrument as a contract of purchase by the corporation but only a ratification of what the board of directors had done. *Ib.*, 500.

In such case there was no evidence to justify a finding that the directors were guilty of laches in relying upon the misrepresentation of the director without further investigation; or that their inaction amounted to an estoppel against a party who made improvements in reliance on the contract. *Ib.*, 500.

## 3. STOCKHOLDERS' RIGHT TO REPUDIATE UNAUTHORIZED CONTRACT OF DIRECTOR.

A contract purporting to be a purchase of property by a corporation is not binding upon it where the directors, being misinformed by one of their number, who was without any general power to make purchases, that the contract was merely an option to purchase, voted "to uphold" it subject to the approval of the stockholders. *Barclay* v. *Club*, 500.

The silence of stockholders does not estop them from repudiating an unauthorized contract where they have no knowledge of its terms or that action was being taken thereunder. *Ib.*, 500.

## COUNSEL FEES, AS COSTS.

*(See Attorneys 2.)*

## COURT.

*(Municipal Court, see Municipal Court.)*

### 1. DISQUALIFICATION OF JUDGE OR MASTER.

An attorney having been appointed master in a suit in the Superior Court and after submission of the case to him and before announcing his decision accepted employment from one of the litigants but in relation to another matter unconnected with the pending suit. Having acted in good faith and without thought of his duties as master in the suit, the employment having in no way influenced his findings did not disqualify him as master as matter of law. *Tuftonboro* v. *Willard*, 253.

### 2. STARE DECISIS.

The application of the doctrine of *stare decisis* rests in the discretion of the court, and will not prevent the correction of an erroneous precedent when the advantage of changing it outweighs that of adherence to it. *Amoskeag Trust Co.* v. *College*, 471.

## CRIMES.

### 1. CRIMINAL INTENT.

The question whether criminal intent is a necessary element of a statutory offense is one of statutory construction. *State* v. *Goonan*, 528.

### 2. RECKLESS DRIVING OF MOTOR VEHICLES.

Laws 1931, *c.* 81, punishing the reckless driving of motor vehicles, is constitutional. *State* v. *Gilbert*, 134.

### 3. NON-SUPPORT OF MINOR CHILDREN.

The operation of the statute making the desertion of minor children by their father a crime (P. L., *c.* 379, *s.* 2) is not suspended by a divorce and decree that he furnish them support. *Healy* v. *McQuaid*, 117.

Where upon an indictment for non-support of minor children, sentence is suspended on condition that certain payments be made to the children's custodian by the respondent who is also ordered to give a bond therefor running to the clerk of court, debt on the bond is properly brought by the clerk and the custodian is properly joined as plaintiff in interest. *Ib.*, 117.

### 4. BIGAMY.

By the statute of bigamy (P. L., *c.* 386, *ss.* 5, 6) the respondent's reasonable belief that he has been legally divorced is not a defence. *State* v. *Goonan*, 528.

### 5. INDICTMENT: CERTAINTY IN PLEADING.

An indictment charging that the respondent "did operate a motor vehicle in a reckless manner upon a public highway . . . and by reason of said reckless operation did cause the death of" A, does not contain a fair and full description of the offense charged, within the meaning of Article 15 of the Bill of Rights. *State* v. *Gilbert*, 134.

An indictment quashed for uncertainty cannot be cured by the filing of a bill of particulars. *Ib.*, 134.

## DAMAGES.

### 1. IN ACTIONS FOR NEGLIGENCE OR FOR BREACH OF CONTRACT, ACTUAL DAMAGES MUST BE ESTABLISHED OR VERDICT WILL BE ORDERED FOR DEFENDANT.

In actions to recover compensation for negligently inflicted personal injuries and to recover damage to property the gist of each action is actual damage resulting from the wrongful act; and in either case failure to prove actual damage entitles the defendant to a verdict though found to have been negligent. *Trudeau* v. *Company*, 83.

In two actions, one by the owner of an automobile for damage it received from a rear end collision caused by the defendant and the other action by a passenger in the owner's car against the same defendant for physical injuries received from the collision, verdicts were rendered in the passenger's action for the defendant, and in the owner's action for the plaintiff. The verdicts cannot be set aside on the ground of inconsistency where the jury were justified in finding

that the passenger had not suffered injuries sufficiently serious to warrant compensation. *Ib.*, 83.

Upon breach of a contract to discharge a mortgage no damages are recoverable for the loss of the property by foreclosure where the plaintiff's equity has no value whatever. *Smith* v. *Wetherell*, 106.

### 2. DUPLICATION OF DAMAGES NOT ALLOWED.

A plaintiff is not entitled to a duplication of damages; hence, if two distinct wrongs committed by the defendant result only in a single and the same loss, the plaintiff must elect his remedy where both cannot be pursued without prejudice to the defendant. *Daniels* v. *Barker*, 416.

Two judgments cannot be legally rendered of which one includes damages included in the other. *Ib.*, 416.

If two persons are found liable for a tort, the damages recoverable therefor will not also be allowed in an action against them for conspiracy to commit the same wrong. *Ib.*, 416.

### 3. IN ACTION FOR ALIENATION OF AFFECTIONS.

In an action for alienation of the husband's affections, the damages of a divorced wife cannot include the loss of her prospective rights in her husband's estate where she has received an award of alimony. *Daniels* v. *Barker*, 416.

### 4. INTEREST AS DAMAGES IN TORT.

For injury to, or detention, loss or destruction of property, interest may be recovered either *eo nomine* on the damages found, or as a part of the damages. *Emery* v. *Company*, 165.

### DIVORCE.
#### (*See Marriage and Divorce.*)

### EQUITY AND EQUITY PLEADING.
#### 1. INJUNCTION.
##### a. *Taxpayer's bill to enjoin illegal expenditures.*

An injury to taxpayers threatened by the exercise of invalid authority by agents of the State, assuming to take action thereunder, on behalf of the State, may be restrained upon a bill in equity by a single taxpayer to enjoin such illegal expenditure of the state funds. *Conway* v. *Board*, 346.

##### b. *Injunction Bond.*

The voluntary dismissal of an injunction suit after the plaintiff has obtained an interlocutory injunction, on giving bond, is a judicial determination of the controversy which establishes a breach of the bond; but where the parties agree to a dissolution of the injunction the defendant waives his right to maintain action on the bond on the ground that the injunction was wrongfully granted. *Crossman* v. *Quimby*, 91.

No waiver of the right of action on an injunction bond can be inferred when the agreement to dissolve the injunction specifies that all rights of action by reason of damages caused by the injunction have been expressly saved. *Ib.*, 91.

## 2. DISCOVERY OF DOCUMENTS.

P. L., *c.* 336, *s.* 8 providing for the production of the books, records and papers of a domestic corporation in any legal proceeding to which it is a party does not deprive the court of its equitable power to order discovery. *Ingram* v. *Railroad*, 277.

The plaintiff's right to discovery does not extend to all the facts which may be material to the issue but is confined to those which are material to his own case. *Ib.*, 277.

Production and inspection of documents will be ordered if the court can fairly find that they may in any way be material to the plaintiff's case. *Ib.*, 277.

When ordering discovery the court may appoint a master to prevent the inspection of any documents not legitimately relevant to the proof of the plaintiff's case. *Ib.*, 277.

*Semble* that discovery by a corporation may be ordered though the facts disclosed might subject it to a penalty. *Ib.*, 277.

## 3. SPECIFIC PERFORMANCE.

A bill in equity may be maintained by the owner of real estate to enforce specific performance of a written contract to purchase it. *Barclay* v. *Club*, 87.

In such contract a stipulation that the cost to the vendor of "rebuilding or new improvements" shall be added to the agreed price, covered more than the cost of mere additions to the old structure and included the cost of entire new construction. *Ib.*, 87.

## 4. TRUSTEE'S BILL FOR DIRECTION.

The right to petition for instruction as to the administration of a trust fund depends upon the preliminary question whether the petitioner has the right to administer the fund. *Keene* v. *School District*, 477; *Wallace* v. *Brown*, 561.

## 5. SUPPLEMENTAL BILL.

If after filing an original bill an event happens which gives a new interest or right to the plaintiff he may move for leave to file a supplemental bill setting forth such new matter though it substantially makes a new case. *Stone* v. *Cray*, 483.

Thus in a bill to enforce a zoning ordinance a supplemental bill was properly allowed to be filed in order to plead a vote of the town amending the original ordinance and passed subsequent to the hearing on the original bill. *Ib.*, 483.

## 6. RESCISSION.

*(Of servant's election to take compensation,*
*see Master and Servant* 1-*b* ii.
*On ground of Mistake, see Corporations* 3.)

Equity ordinarily refuses rescission unless the parties can be put back *in statu quo* and if this is impossible such relief will be granted only where the clearest and strongest equity so demands. *Record* v. *Company*, 1.

Equity does not reward one for being wronged but acts only to compensate and to prevent loss; and hence, equity does not give rescission for fraud where the denial of that relief involves no loss to the complainant. *Ib.*, 1.

Hence, where the executrix and sole legatee of an estate was induced by fraud to give her personal note upon surrender of a claim collectible against it, she suffered no injury entitling her to rescission, where her interest in the estate was increased by the exact amount of her note.   *Ib.*, 1.

### 7. MOTION TO DISMISS BILL.

A motion to dismiss a bill raises the question of the sufficiency of the evidence on every issue material to establish liability; and on exception to the denial of such motion special findings may be questioned though requests for contrary findings have not been specifically made.   *Record* v. *Company*, 1.

### 8. LACHES.

A mortgagor who for eight years has recognized the mortgage as a subsisting and valid security, though knowing throughout the period facts entitling him to a discharge of the mortgage on the ground of fraud, will not be heard to contest its validity on that ground.   *Record* v. *Company*, 1.

No laches was imputable to directors who relying on the misrepresentations of another director as to the nature of a contract, without further investigation, voted "to uphold it."   *Barclay* v. *Club*, 500.

### 9. DECREE, WHEN SHOULD BE REOPENED.

Evidence that certain property had not been enhanced in value by improvements was properly admitted on the issue whether justice required a decree should be re-opened whereby the defendant was ordered to pay for improvements in addition to the purchase price.   *Barclay* v. *Club*, 500.

### 10. MOTION FOR REHEARING AND TERMS THEREOF.

Upon a motion for a rehearing on the ground of mistake, counsel fees commensurate with the additional services required by the rehearing may be awarded to the opposite party as terms of granting the motion.   *Barclay* v. *Club*, 500.

### ESTOPPEL.

*(See Accord and Satisfaction; also Corporations 2, 3.)*

### EVIDENCE.

*(Scintilla of Evidence, see Railroads, 4-a.)*

### 1. JUDICIAL NOTICE.

Though the court will take judicial notice that trucks for private transportation constitute a substantial amount of the highway traffic, yet judicial notice cannot be taken of the conditions of employment in that branch of the trucking industry; and hence the court will not declare unconstitutional as discriminatory a legislative classification whereunder only the hours of drivers of carriers for hire are regulated.   *Welch Company* v. *State*, 428.

## 2. PRESUMPTIONS.

The presumption is that an owner of real estate knows the facts as to his boundaries and possession. *Tuftonboro* v. *Willard*, 253.

## 3. RELEVANCY AND REMOTENESS.

### *a. Specific examples.*

#### i. State of mind or feelings, motive.

Statements to show the feelings, purposes and actions of the parties both before and after the fact in issue are admissible where such statements are relevant. *Ford* v. *Ford*, 292.

In a wife's action for alienation of her husband's affections by the husband's sister, testimony to show the sister-in-law's feelings towards her brother-in-law as well as his feelings towards her is relevant on the issue of the motive to alienate. *Daniels* v. *Barker*, 416.

In such case, testimony of statements made to the witness by the plaintiff's husband are admissible only so far as they disclose his feelings towards his sister-in-law. Hence evidence of his order that she be made to leave his home is admissible but not his statement that the purpose of her visit was to have him make a will. *Ib.*, 416.

The statement of the person charged with procuring a will by undue influence to the effect that the testator's father was only a life tenant on whose death the declarant would be left penniless is admissible to prove motive though not to prove title. *Ford* v. *Ford*, 292.

On the issue of *devisavit vel non* the quality of the testator's mind is relevant. *Ib.*, 292.

On such issue evidence of the petition of the testator for appointment of a conservator was properly admitted where the obtaining of that petition is attributable to the person charged with procuring the will. *Ib.*, 292.

#### ii. Extra-judicial statement by witness, in corroboration of his testimony.

An extra-judicial statement by a witness to the same effect as his testimony, though generally inadmissible, may be admitted where the statement furnishes a circumstantial support of the truth of his testimony. *State* v. *Slocinski*, 262.

Hence, a witness having testified that a respondent, in a talk with him about a year before a fire, threatened to burn the property was properly permitted to further testify that after the respondent's arrest the witness informed both his lawyer and then the police of that threat. *Ib.*, 262.

#### iii. Motive for crime.

In the trial of an indictment for arson, wherein the State claimed that the respondent set fire to church property to obtain the insurance money, evidence that the day before the fire he made a payment towards unpaid premiums was competent on the issue of motive as tending to show his effort to forestall any claim that the insurance was not in effect. *State* v. *Slocinski*, 262.

iv. That reduced speed of train should have been required.

Evidence that an engineer has a greater control over his train at lower speeds than at higher ones is relevant to show that orders requiring reduced speed at a crossing should have been adopted by the defendant.   *Carbone* v. *Railroad*, 12.

v. Correspondence to show verbal contract.

Where the understanding of the parties respecting the terms of their verbal contract is in issue, the principle requiring that the whole of an utterance whether oral or written be taken together requires the admission of all letters which make up the complete correspondence relating to such issue; and hence a party to show his own understanding of the contract may introduce his reply to a letter from the opposite party.   *Clapp Co.* v. *McCleary*, 65.

There is no general principle of evidence excluding self-serving declarations.   *Ib.*, 65.

vi. Photograph of decedent to show his state of health.

To establish the state of health of a deceased person his photograph may be admitted or excluded in the discretion of the trial justice.   *Nickerson* v. *Bentley*, 533; *Hackett* v. *Railroad*, 514.

vii. Health of posthumous child to show damages resulting from death of father.

Proof of the health of a posthumous child is relevant on the issues of the probable duration and amount of the contributions by the deceased father (if he had lived) in view of the child's good or bad health.   *Hackett* v. *Railroad*, 514.

viii. That sand had been blown on other land, to show cause of change in surface of *locus*.

On the issue whether changes which had occurred in the surface of land lying west of a highway were caused by the deposit of sand by winds, evidence is relevant that sand had been blown onto land lying east of the highway.   *Salisbury Beach Associates* v. *Littlefield*, 447.

ix. Boundary of Highway.

(*See Highways* 1.)

x. Experimental Evidence.

Where experimental evidence is introduced to show within what distance a vehicle similar to that involved in an accident could be stopped at varying rates of speed, the evidentiary strength of the test is invalidated where the evidence of similar physical conditions is at best confusing and unreliable.   *Legere* v. *Company*, 423.

xi. Habitual care of deceased.

Where all the witnesses to a grade crossing collision are dead including the plaintiff's intestate, the inference that he looked and listened before driving thereon may be drawn from evidence of his habitual care in approaching railroad tracks.   *Carbone* v. *Railroad*, 12.

xii. Issue of devisavit vel non.

(*See Wills* 1.)

### b. Remoteness and Immateriality.

The fact that a plaintiff had crossed a street in safety many times before an accident has no logical tendency to prove that it was caused by the defendant's fault.   *Carlin* v. *Drake*, 52.

Where in the trial of an indictment for arson the respondent claimed that he would receive no benefit from the fire unless the loss was total, evidence that the property was in an area where other fires had resulted only in partial losses was properly excluded as too remote.   *State* v. *Slocinski*, 262.

In such trial, the respondent being a priest claiming to have taken vows of celibacy, a photograph had been admitted which tended to show that he had at one time been married.   The photograph having been withdrawn later and the jury told to disregard all reference to it, the presumption is that the instruction was observed.   *Ib.*, 262.

### c. Exclusion When in Discretion of Trial Court.

In the exercise of a sound discretion, relevant evidence may properly be excluded for remoteness or undue prejudice or as being merely cumulative.   *Hackett* v. *Railroad*, 514.

Implied findings of the trial court that relevant evidence was not too remote or unduly prejudicial were reasonably made.   *State* v. *Slocinski*, 262.

The exclusion of evidence upon objection that it is immaterial and prejudicial is no ground for exception, if the evidence might properly have been excluded as cumulative.   *Hackett* v. *Railroad*, 514.

### 4. OPINIONS.

The test of the qualification of an expert is whether his knowledge would probably aid the jury in its search for the truth, and the fact that a locomotive engineer took his figures as to speed and distances from standard text books, being unable to make the calculations by the use of scientific formulae, did not render him incompetent.   *Carbone* v. *Railroad*, 12.

The question whether a witness possesses the qualifications to testify as an expert is one for the trial court and the fact that he is permitted to give expert testimony implies a finding of his qualification.   *Emery* v. *Company*, 165.

As to the quality of a testator's mind, witnesses found by the court to be competent to form valuable opinions on the subject may testify.   *Ford* v. *Ford*, 292.

And a ruling permitting a witness to state conclusions which he drew from facts was sustained.   *Ib.*, 292.

A ruling of the Presiding Justice that the jury would derive no aid from the opinion of a surveyor as to the location of a boundary of land was justified where the plans upon which his opinion was based had not yet been offered in evidence and the question asked him referred ambiguously either to the present physical conditions or to those at an earlier date.   *Salisbury Beach Associates* v. *Littlefield*, 447.

### 5. HEARSAY RULE AND ITS EXCEPTIONS.

#### a. Declarations of Deceased Surveyor.

The declaration of a deceased surveyor that a certain stone wall was on the westerly side line of a road is admissible to prove that the road was laid out to the line of the wall, where the surveyor, having originally laid out the road, was familiar with the lines in its vicinity and was present using his instruments, when the wall was being built.  *Tuftonboro* v. *Willard*, 253.

#### b. Of Deceased Landowners.

The declarations of deceased landowners as to matters relating to their boundaries are admissible.  *Salisbury Beach Associates* v. *Littlefield*, 447.

#### c. Recitals in Private Documents as to Matters of General and Public Interest.

Deeds and other private documents are admissible to prove general reputation as to matters of general and public interest recited therein.  *Tuftonboro* v. *Willard*, 253.

Recitals in ancient deeds of adjacent lands, although neither party claims under them, are admissible to show the substantial location of common private boundaries as well as those of a public right, where nothing indicates a motive on the part of the grantors to misrepresent.  *Ib.*, 253.

#### d. Rule of Res Gestae.

Testimony that an utterance made by a third person immediately after a collision to the effect that "it was unavoidable" was properly rejected, there being no offer to prove that the utterance was spontaneously made under the excitement of the accident and the words uttered being a mere statement of opinion and not a relation of facts.  *Bullard* v. *McCarthy*, 158.

### 6. DOCUMENTARY EVIDENCE.

#### a. Parol Evidence Rule.

A receipt may be explained by parol and its true meaning and purpose shown.  *Markarian* v. *Bartis*, 370.

#### b. Public Records.

A copy duly authenticated by the registrar of vital statistics of a death certificate made by the attending physician, as required by P. L., c. 143, s. 20 recorded by the town clerk and transmitted by him to the registrar of vital statistics, as required by P. L., c. 285, s. 6, is *prima facie* evidence of "the disease or cause of death" under sections 9, 10.  *Abbott* v. *Insurance Co.*, 149.

### 7. PRODUCTION OF EVIDENCE.

#### 1. Leading Questions.

The admission or exclusion of leading questions is a matter within the discretion of the trial court, and an exception to the allowance of such questions is unavailing.  *Atherton* v. *Rowe*, 196.

The latitude allowed to counsel in examining his own witness is within the discretion of the trial court.  *Ford* v. *Ford*, 292.

## 2. Discretion of Trial Court.

Statements to show the feelings, purposes and actions of the parties both before and after the fact in issue where such statements are relevant are within the discretion of the trial court. *Ford* v. *Ford*, 292.

And so of a ruling permitting a witness to state conclusions which he drew from facts. *Ib.*, 292.

And so of the exclusion of a question previously answered. *Ib.*, 292.

Latitude of counsel in examining his own witness. *Ib.*, 292.

## 8. ADMISSIONS.

In a petition for a declaratory judgment by an insurer to determine coverage under a motor vehicle liability policy a statement made by the named insured is not admissible as an admission where he is only a nominal party and as a bailor of the vehicle is under no liability to the party claiming the coverage. *Aetna Life Ins. Co.* v. *Chandler*, 95.

A payment made on a note during the pendency of the action thereon is an admission that the action was brought for good cause. *Lehigh Navigation &c. Co.* v. *Company*, 274.

An assertion made in the argument for the defendant that the plaintiff's injuries were not "very severe" but only "slight" does not compel an award of some damages or prevent the rendering of a verdict for a defendant. *Trudeau* v. *Company*, 83.

## 9. WAIVER OF OBJECTION TO EVIDENCE.

After testimony that the contents of a certain book was shown to one of the parties, a general exception to the admission of the book in evidence is unavailing, where other evidence to the same effect as the statement in the book had been received without objection. A specific objection should have been made to the admission of the book as containing hearsay. *N. E. Redlon Co.* v. *Corporation*, 137.

An exception to expert testimony is waived by the later introduction of supporting evidence. *Vallee* v. *Company*, 285.

## 10. REBUTTAL EVIDENCE.

In a wife's action for alienation of her husband's affections by the husband's sister after the defendant had testified that the relations between herself and the husband had been pleasant and friendly, the plaintiff may introduce testimony in rebuttal to show a contrary state of feeling on the part of the defendant. *Daniels* v. *Barker*, 416.

## 11. DEPOSITIONS.

Under P. L., c. 337, ss. 1, 5, 10; Laws 1903, c. 21, s. 5, a municipal court or justice of the peace has authority to issue a commission to take depositions in a case pending before it. *Wessells* v. *Company*, 230.

## EXECUTOR.

An executor is entitled to no advice as to the estates and powers intended to be vested in devisees and legatees of the residue. *Wallace* v. *Brown*, 561.

## FOREIGN LAWS.

### (See Conflict of Laws 5.)

## HIGHWAYS.

### (Liability of Municipality for Injury to Adjacent Property in Maintenance of Highways, see Municipal Corporations, 3.)

### 1. BOUNDARIES OF HIGHWAYS: EVIDENCE AS TO LAYOUT.

A fence or wall erected as a permanent structure along the side of a wrought road is probably intended to mark the line separating the highway use from private occupancy and possession. *Tuftonboro* v. *Willard*, 253.

An ancient straight wall forty-six feet long is not too short to provide a basis for the determination of a line of a highway which was laid out in a straight line about six hundred feet long. *Ib.*, 253.

Evidence that a predecessor in title laid down and maintained a line of logs along the alleged line of a highway to prevent trespassing is admissible to show the line of the layout. *Ib.*, 253.

### 2. LIABILITY OF PERSONS FOR INJURIES CAUSED IN USING HIGHWAYS.

#### a. Law of the Road.

The law of the road (P. L., c. 90, s. 1) requires a driver to turn to the right of the center when meeting and passing a person moving in the opposite direction; but driving to the left does not *per se* establish liability where there is no reason to anticipate the presence or movement of another person in season to have avoided injuring him. *Nickerson* v. *Bentley*, 533.

#### b. Negligent Conduct of Defendant in General: Speed.

In an action for striking and injuring a child upon a highway by a motor vehicle the evidence justified the inferences that the defendant saw the child before he darted across the highway, and by not checking the speed of his car contributed to cause the accident. *Bullard* v. *McCarthy*, 158.

In such case the evidence as to the speed of the defendant's car warranted the instruction that "though he was not driving over the statutory limit, the question of fact remained whether the speed at which he was operating his car was negligent." *Ib.*, 158.

Where in an action for injuries sustained by a child, coasting on a highway, from collision with a motor vehicle there was no evidence that the defendant's speed was causally negligent, a finding that he ought to have seen the child enough sooner to avoid hitting him was not warranted by the evidence. *Grealish* v. *Odell*, 130.

The provision of P. L., c. 103, s. 18 as amended by Laws 1927, c. 76, s. 2 that a speed exceeding fifteen miles an hour is *prima facie* unlawful in traversing or going around curves or traversing a grade upon a highway "when the driver's view is obstructed within a distance of one hundred feet along such highway in the direction in which he is proceeding" applies both to obstructions of a permanent character and to obstruction to view caused by fog; but the statute has no application where the road is straight for several hundred feet in both directions from the point of collision. *Laflamme* v. *Lewis*, 69.

In an action against the driver of a motor vehicle for injuries to a boy eight years old, who coasted on a cart down a driveway and into the highway, the evidence warranted a conclusion that a reasonably vigilant driver would have discovered the approach of the cart sooner and taken measures to avoid the collision. *Crook* v. *Parkhurst*, 280.

In such case the jury were properly permitted to determine whether as claimed by the defendant, his attention to his ammeter and oil gauge prevented his seeing the plaintiff at an earlier moment or whether that claim was an inadequate excuse. *Ib.*, 280.

The reflector prescribed by Laws 1933, *c.* 105, *s.* 2 for the rear of commercial vehicles is required not as a substitute for a tail light but in addition thereto as an auxiliary means of warning. *Putnam* v. *Bowman*, 200.

Evidence that the plaintiff did not see the reflector on the rear of the truck cannot justify a finding that he would not have seen a lighted tail light, had one been present. *Ib.*, 200.

*c. Liability under Parking Statute.*

The provision of Laws 1927, *c.* 76, *s.* 3 prohibiting parking "upon the paved or improved or main traveled portion of any highway . . . when it is practicable to park . . . off of the paved or improved portion of such highway" does not require a truck driver in a heavy fog to park on the left side of the highway where to reach that position he would be compelled to back up 150 feet in fog and darkness and to cross the line of opposing traffic. *Laflamme* v. *Lewis*, 69.

In such case compliance with the act requires the driver to keep moving until he can find a place to park outside the traveled portion of the highway. *Ib.*, 69.

In an action to recover for physical injuries received from a collision between the plaintiff's automobile and the rear end of the defendant's truck, which was needlessly left standing partly within the traveled part of a highway with unlighted tail lights, the evidence warranted a finding of liability because of negligence, or because of violation of either the statute relating to rear lights on motor vehicles or of the parking statute. *Putnam* v. *Bowman*, 200.

The parking statute (Laws 1927, *c.* 76, *s.* 3) is applicable unless a motor vehicle is so disabled as to render it impossible for the driver to avoid stopping and leaving the vehicle on the highway. On certain evidence that issue was properly submitted to the jury. *Ib.*, 200.

The parking statute (Laws 1927, *c.* 76, *s.* 3) is violated regardless of lights and opportunity for view if a vehicle is left on a main highway where there is less than ten feet of main traveled road opposite to it, free for the passage of other vehicles. *Ib.*, 200.

*d. Contributory Negligence.*

i. In general.

Ordinarily a driver of a car is not negligent in failing to turn out further when there is already sufficient space to allow another car to pass in safety. *Loughlin* v. *Johnson*, 191.

Failure on the part of the driver of a motor vehicle to keep the wind-shield wiper in constant operation on a foggy night is not negligence as a matter of law

where the evidence would justify the conclusion that the fog only intermittently prevented visibility. *Laflamme* v. *Lewis*, 69.

Where the evidence as to the plaintiff's speed does not conclusively establish his fault, the question of contributory negligence is for the jury. *Putnam* v. *Bowman*, 200.

In an action for running down the plaintiff when crossing a highway the only conclusions possible from the plaintiff's own testimony were that he saw the defendant's car and carelessly stepped in front of it or that he did not see the car because he was careless in the manner he looked for it. *Brown* v. *Mailhot*, 240.

### ii. Conduct in Emergency.

The contention that a driver of a car was negligent in not watching the course of another car after meeting it and after it had passed the front end of his car is unavailing where the collision occurred so quickly thereafter that time was not afforded for saving action. *Loughlin* v. *Johnson*, 191.

Contributory negligence cannot be established as a matter of law where the plaintiff has not sufficient time to make an appraisal of the situation and to act upon his appreciation of the danger. *Bellevance* v. *Boucher*, 361.

The driver of a car on a highway who saw an approaching car swerving, and skidding on a wet concrete road, was not necessarily at fault in taking time to determine whether the car would go to the right side of the road. *Ib.*, 361.

A choice erroneously made between courses of relative safety is not necessarily negligent where time is insufficient for deliberation and action. *Ib.*, 361.

Where the space of only $4\frac{1}{2}$ seconds was afforded the plaintiff, between his discovery of a swerving automobile and his collision with it, an allowance of half that time might fairly be allowed for making a choice between alternative courses of safety, and the margin of $2\frac{1}{4}$ seconds thereafter was too brief a time to escape collision. *Ib.*, 361.

### e. Liability to Passenger; and his Contributory Negligence.

In an action by a passenger in an automobile against her driver for injuries caused by his negligence in not avoiding collision with an oppositely approaching car, no finding of his negligence is warranted if the erratic and uncontrolled course of the opposite car and the excessive speed of its approach afforded the defendant no opportunity for any deliberate choice of conduct to avoid the peril. *Morin* v. *Morin*, 206.

Nor did the evidence in such case warrant the conclusion that at any time prior to the collision the defendant could have anticipated the future movements of the approaching car and avoided them by drawing to the side of the road. *Ib.*, 206.

In an action by a passenger for injuries caused by the negligent driving of another car the negligence of the driver is not imputable to the plaintiff; but the passenger is denied recovery if the proximate cause of his injury is either his own negligence in selecting an incompetent driver or his own negligent conduct when faced with impending danger. *Laflamme* v. *Lewis*, 69.

A passenger in a motor-vehicle is not required to be constantly on the alert to discover unanticipated but possible dangers or to be alert at all times to guard against possible lapses from care on the part of his driver. Hence, where

there was no evidence to sustain a finding that a passenger was aware a windshield wiper was not in operation no question arose of his duty in respect to an alleged failure of the wiper to work. *Ib.*, 69.

The duty of a passenger to protest against the negligent operation of a motor vehicle by the driver is not absolute but depends upon the circumstances of the particular case. Where a passenger knows or should know of the danger, the issues arise whether due care on his part required him to protest to the driver or whether prudence dictated he should not complain; also whether a protest would probably have been heeded, and whether there was time for a protest to produce saving action. *Ib.*, 69.

In an action by a passenger against her driver, the evidence warranted no finding of negligence where the defendant, having no knowledge that the driver of a car approaching slowly on the wrong side of a country road was intoxicated, attempted to pass by turning gradually to the left at a reasonable speed, leaving sufficient room for the other car to proceed on its course. *Loughlin* v. *Johnson*, 191.

A passenger is not guilty of contributory negligence in intrusting himself to a driver of whose incompetency to drive there is no evidence. *Putnam* v. *Bowman*, 200.

Whether due care required a passenger to both foresee that the close air in the car would make the driver fall asleep and thereupon to insist that the windows be opened was an issue for the jury. *Miltimore* v. *Company*, 272.

A passenger by falling asleep is not guilty of contributory negligence as a matter of law. *Gilbert* v. *Joyal*, 557.

### f. Liability for Injury or Damage at Intersections.

### i. Defendant's Negligence.

In an action for injuries caused by the driver of a motor vehicle at an intersection of streets the questions of excessive speed and of failure to signal were issues for the jury. *Carlin* v. *Drake*, 52.

In an action for injuries received from a collision of motor vehicles directly approaching each other on a highway near an intersecting private road, the issue of excessive speed was properly submitted though the speed of neither driver exceeded thirty-five miles per hour, if reasonable men might conclude that the speed of either or both drivers was unreasonable or improper. *Kelley* v. *Lee* 100.

An operator of a motor vehicle who, on the change of traffic signals, immediately starts through a street intersection at a speed of 12 to 15 m.p.h. and fails to see a pedestrian coming from his left, may be found to have been negligent in striking him when the operator's vision was impaired by fog or by the dazzle of lights on approaching cars; or if his vision was clear, his failure to keep an adequate look-out ahead may constitute negligence. *Jackson* v. *Smart*, 174.

In an action for damages received by the collision of motor vehicles in a highway intersection, wherein the defendant's car going northerly collided with the rear of the car driven by the plaintiff and going easterly, the defendant's admission that the plaintiff's car was always fully within his view when it stood still before crossing and while crossing, together with evidence of the defendant's speed of thirty-five miles per hour, justified the conclusion that the defendant was negligent in not taking saving action. *Leavitt* v. *Bacon*, 383.

ii. Contributory negligence.

A pedestrian who, seeing cars halted by a street signal and awaiting a signal for them to cross his path at any moment, proceeds across the street in front of them without giving heed to them or to the signals is guilty of contributory negligence. *Jackson* v. *Smart*, 174.

The right to rely upon the careful conduct of another person does not dispense with the duty to exercise due care for oneself; and full reliance cannot be placed upon another's care when it is unreasonable to do so. *Ib.*, 174.

The conduct of a pedestrian in crossing an intersection of streets while the traffic signals permit cars to turn the corner and cross her path on a cross-walk is not to be tested merely in the light of the pedestrian's observation before attempting to cross but rather in the light of what she ought reasonably to have seen. *L'Heureux* v. *Desmarais*, 237.

Hence in an action for negligently injuring a pedestrian by running upon her with an automobile in turning the corner of a street intersection, a request was properly refused to the effect that if the plaintiff before stepping into the street looked to her left for cars turning the corner and from her observation was justified in assuming that the defendant would not come upon the cross-walk then her inattention to traffic on her left while crossing the street was not negligence. *Ib.*, 237.

On certain evidence of the activity of traffic at a street corner, of the lack of visibility due to weather conditions and the pedestrian's knowledge that the traffic signal permitted cars to turn the corner onto her path over a cross-walk, the pedestrian was not warranted in assuming that traffic would remain stationary for ten seconds while she walked a distance of about thirty-eight feet. *Ib.*, 237.

The failure of a plaintiff-driver to look to the right or left after starting into the intersection, and while traversing it twenty-five feet, warranted the conclusion that her conduct was a contributing cause of the collision. *Leavitt* v. *Bacon*, 383.

In the action by a minor passenger in such plaintiff's car, tried in conjunction with the plaintiff's action, motions for a nonsuit and a directed verdict were rightly denied, there being no conclusive evidence of the minor's negligence. *Ib.*, 383.

Though a wife's negligent driving of her husband's car has contributed to a collision with the car of the defendant, the husband being in no way responsible for her negligent driving, may recover for damage to his car. *Ib.*, 383.

In an action by the driver's husband to recover for injuring his car, tried in conjunction with other actions and against the same defendant, the wife's negligence in driving the car was not imputable to her husband, if she was not driving the car upon her husband's business or as his agent or in a joint enterprise. *Ib.*, 383.

*g. Injuries to persons sliding on highways.*
(*See Negligence 3 c.*)

HUSBAND AND WIFE.

1. SURETYSHIP OF WIFE FOR HUSBAND.

The validity of a mortgage of New Hampshire land executed in Massachusetts by a married woman to secure her husband's debt is determined by the law of Massachusetts. *Proctor* v. *Frost*, 304.

## 2. WIFE'S NEGLIGENT DRIVING OF HUSBAND'S CAR WHEN NOT IMPUTABLE TO HIM.

Though the wife's negligent driving of her husband's car contributed to a collision with the car of the defendant, the husband being in no way responsible for her negligent driving, may recover for damage to his car. *Leavitt v. Bacon*, 383.

## INFANT.

*(Contributory negligence of, see Negligence 3-b; also Highways 2-f-ii.)*

## INSURANCE.

### 1. PRESUMPTION THAT FOREIGN INSURANCE COMPANY IS AUTHORIZED TO DO BUSINESS IN ITS HOME STATE.

An insurance corporation actually doing business in its home state is presumably authorized to do so until the contrary appears. *University Overland Express v. Griffin*, 395.

### 2. STATUTORY DUTY OF FOREIGN INSURANCE COMPANY TO PAY PERCENTAGE ON PREMIUMS.

A foreign life insurance company receiving premiums for annuity contracts paid by residents of this State is subject to payment of the percentage thereon prescribed by P. L., c. 275, s. 60, as part of the "gross premiums received by it from residents of the state." *New York Life Ins. Co. v. Sullivan*, 21.

Notice by the Insurance Commissioner to such company of the amount of such percentage is not the assessment or levy of a tax but notice of a duty to pay a statutory fee for conducting its business in this State and hence, the collection of the percentages due for prior years is not barred by any statutory provision as to the collection of "back taxes." *Ib.*, 21.

### 3. APPLICATION BY INSURER FOR LICENSE TO AGENT.

Under Laws 1917, c. 43 an application by an insurance company for a license to an agent is not to be construed as showing that the appointee is a general agent though such application does not define the extent of the agent's authority. *Hartford Accident &c. Co. v. Lougee*, 222.

A license for one to act as such agent so far as the principal authorizes him to act states the extent of his authority. *Ib.*, 222.

### 4. INSURER'S LIABILITY FOR ACTS OF ITS AGENT.

*(See Agency.)*

### 5. LIFE INSURANCE.

*Application: misrepresentation.*

A false statement as to medical history affects the acceptance of the risk as a matter of law. *Manelas v. Insurance Co.*, 559.

## 6. INSURANCE AGAINST DEATH BY ACCIDENT.

No recovery can be had for accidental death benefits upon a policy of insurance where the evidence does not disclose the cause of the assured's death, or whether the injuries he received were likely to cause death or whether death resulted from external injuries. *Abbott* v. *Insurance Co.*, 149.

In an action upon a policy insuring against death "as a result directly and independently of all other causes of bodily injuries effected solely through external violent and accidental means" the question was properly submitted to the jury whether the assured's death was caused by heart disease while bathing and floating in the ocean or whether due to some external cause he sank and was then drowned. *Simoneau* v. *Insurance Co.*, 402.

The voluntary act of the assured in entering the water to bathe and swim does not prevent a finding that his death was accidental but the question was properly submitted whether under all the circumstances, including the assured's physical condition, his ability as a swimmer, and the temperature and calmness of the water, some unforeseen accidental means intervened and caused his death, independently of his volition and his reasonable anticipation. *Ib.*, 402.

The sinking of the assured and his death in such case could properly be found to have been caused by accidental means, if in the usual course of events his sinking was not expectable and if no non-accidental means intervened. *Ib.*, 402.

## 7. INSURANCE AGAINST LIABILITY IMPOSED BY LAW.

### a. Standard Liability Policy excludes Special Class of Persons.

A clause in a standard liability policy bearing the statutory endorsement (Laws 1927, c. 54) and excluding a special class of persons from the coverage of the policy is a valid limitation of liability if approved by the Insurance Commissioner. *Shelby Mutual &c. Co.* v. *Lynch*, 510.

Hence, a clause in a policy which excludes the named assured's employees is valid if so approved. *Ib.*, 510.

Though the exact terms do not appear in which the approval of the commissioner is expressed, but the only reasonable inference is that his official order was made without conditions or qualifications, the insurer is entitled to take it at its face value. *Ib.*, 510.

A motor vehicle liability policy issued in Massachusetts gave extra-territorial coverage "to any person . . . legally responsible for the operation thereof, provided such use or operation is with the permission of the named assured." Permission having been given by the named assured to a bailee to use the car reasonably for the latter's needs, the coverage extended to an agent of the bailee who during her illness and upon her direction was driving the car to procure medicine for her. *Aetna Life Ins. Co.* v. *Chandler*, 95.

On the issue of the permissive use of a car by the bailee, her testimony that she "could use the car as if it were her own" is competent in connection with other evidence to show the extent of the permissive use though the privilege of use was not granted by the bailor in those express terms. *Ib.*, 95.

The fact that the express permission to a bailee to use a car may have been limited to traveling between two designated places does not as a matter of law

exclude a finding on other evidence that the bailee had implied permission to make a reasonably necessary use of it outside such limits. *Ib.*, 95.

The fact that the named assured's car had never before been used by an agent of the bailee does not compel a finding that the bailee could only use the car personally. *Ib.*, 95.

Express consent by the named assured to the use of a car by his bailee's agent is not a prerequisite to the insurer's liability under a policy providing that the "use or operation is with the permission of the named assured." *Ib.*, 95.

### 8. AGAINST COLLISION: LIABILITY TO MORTGAGEE.

The insurer in a policy of collision insurance payable to the owner or his mortgagee "as interest may appear" is not discharged from its liability to the mortgagee where the owner has made settlement with and released a third party, liable to the owner for causing the collision, the mortgagee not being a party thereto. *Sargent* v. *Insurance Co.*, 171.

## INTEREST.
*(As damages, see Damages 4.)*

## INVITEES' RECOVERY FOR DEFECT IN PREMISES.
*(See Negligence 4.)*

## JUDGMENT.
### 1. NUNC PRO TUNC.

Entries of judgments *nunc pro tunc* are made in furtherance of justice. *Tuttle* v. *Tuttle*, 219.

### 2. DATE.

The last day of the term is usually assigned as the day from which the acts of the court take their date; but the practice of having one judgment day for the term is not invariable and the Presiding Justice has authority to order the entry of judgment on any day after rendering his decision. *Tuttle* v. *Tuttle*, 219.

### 3. ENTRY ON STIPULATION.

The entry of a decree or judgment upon a parol stipulation made by the parties or their counsel in open court is ordinarily made as a matter of course. *Perley* v. *Bailey*, 359.

## LANDLORD AND TENANT.
### 1. LANDLORD'S COVENANT TO PAY TAXES.

A covenant by a lessor of a filling station to pay all taxes "assessed upon the leased premises" construed in connection with a provision giving the lessee permission to remove on termination of the lease "any property owned or placed thereon by it" required the lessor to pay taxes on all buildings and other improvements erected by the lessee since the date of the lease and which cannot be removed without destruction. *Amoskeag Sav. Bank* v. *Company*, 30.

### 2. COVENANT TO SURRENDER IN GOOD CONDITION.

A covenant that a lessee shall surrender the premises at the termination of the lease in as good condition as at the date thereof does not mean that all improvements must be eliminated and treated as personal property but only requires that the premises in their transformed condition shall be returned in a reasonably good state of repair, reasonable use and wear excepted. *Amoskeag Sav. Bank* v. *Company*, 30.

### 3. RENT: OBLIGATION OF TENANT TO PAY, TERMINATED BY TITLE PARAMOUNT OR BY ASSIGNMENT OF RENT.

The obligation of a lessee to pay rent to the lessor is terminated when the lessor's ownership becomes lost by a paramount title, *e.g.* by foreclosure. *Smith* v. *Wetherell*, 106.

In such case a lessee who buys the property from the purchaser at the foreclosure sale is not disputing or denying the title of the lessor though the lessee had never been evicted from possession. *Ib.*, 106.

Where, after the assignment of a lease of mortgaged property, an agreement between lessor and lessee provides that the latter "shall make payments on the mortgage as same fall due . . . and all payments . . . shall be credited on rent" the purpose of such agreement is to secure the lessee against loss of possession by foreclosure. *Ib.*, 106.

Such agreement to pay being no more than a reservation by the lessee of a right to pay the rent money towards the discharge of the mortagage he is under no liability to the lessor because of the omission to exercise that right; for the agreement was not intended to give the lessor security by providing for discharge of his obligation but merely to protect the lessee, and hence damages for the loss of the property by foreclosure are not recoverable. *Ib.*, 106.

If after such agreement the lessor assign the rent to his general creditors his former direction to pay the rent to the mortgagee is revoked. *Ib.*, 106.

The failure of a lessee to pay rent to the lessor's assignee thereof although a breach of the lessee's covenant with the lessor does not revest in him the right to the rent. *Ib.*, 106.

Unpaid rent accruing after an assignment by the lessor of his interest in the lease is payable to his assignee. *Ib.*, 106.

### 4. ASSIGNMENT OF LEASE: SUB-LEASE.

An instrument may constitute an assignment of the lessee's interest so far as the lessee has rights against the landlord and also constitute a sub-lease as between the lessee and his assignee. *Bellows Falls Trust Co.* v. *Company*, 551.

In the latter case the obligation of the assignee to the original lessee (his assignor) cannot be avoided by any agreement or stipulation between the original lessor and the assignee purporting to cancel or annul the original lease. *Ib.*, 551.

By accepting a transfer of the rights of a lessee the transferee agrees to its terms and impliedly promises to perform the duties thereby imposed, and a promise to pay royalties contained in such assignment runs with the land and each subsequent assignee of the lease, including the purchaser from a receiver, assumes that obligation. *Ib.*, 551.

The right of two lessees to an extension of a lease is the right of two tenants in

common and if they both assign the lease their assignee is not obliged to exercise the right of extension unless such obligation is imposed by the terms of the transfer. *Ib.*, 551.

A promise to pay royalties contained in a lease or in an assignment thereof runs with the land and binds any subsequent lessee or assignee of the term. *Ib.*, 551.

### 5. LIABILITY OF LANDLORD FOR INJURIES TO TENANT FROM DEFECT IN PREMISES.

A landlord is not liable for injuries received by his tenant from a defective staircase exclusively within the control of the tenant where, in the absence of an agreement to repair, the landlord has unsuccessfully attempted to repair the staircase but without the tenant's knowledge and without increasing the danger. *Kuchynski* v. *Ukryn*, 400.

## LEASE.

### ROYALTIES RUNNING WITH LAND.
(*See Landlord and Tenant* 4.)

## LICENSE.

(*Of Taxicabs, see Municipal Corporations* 2.)

## LIEN.

### FOR REPAIR OF MOTOR VEHICLE.

The lien given by P. L., c. 217, s. 36 to one who repairs a motor vehicle "so long as the same shall remain in his possession" is not necessarily dependent upon continuous physical control by the lienor and his temporary surrender of the vehicle upon an agreement to return it shortly does not terminate such lien. *Commercial Acceptance Corp.* v. *Company*, 45.

## LIMITATION OF ACTIONS.

### AGAINST INDORSER OF NOTE SECURED BY MORTGAGE.
(*See Negotiable Instruments* 3.)

## MARRIAGE AND DIVORCE.

### 1. PETITION FOR ANNULMENT.
(*See also Conflict of Laws* 4.)

P. L., c. 286 does not purport to state the conditions necessary to give jurisdiction of a petition for annulment; and in the absence of statutory jurisdictional requirements jurisdiction depends upon common-law principles, which are recognized and adopted in equity. *Foster* v. *Foster*, 376.

The jurisdictional provisions of the statute of divorce (P. L., c. 287, ss. 3-5) do not control a petition for annulment. *Ib.*, 376.

A petition for annulment of a marriage entered into in this state by a person under the age of consent may be maintained under P. L., c. 286, s. 5 though the petitioner is a non-resident if the defendant is a resident. *Ib.*, 376.

## 2. DIVORCE.

Where a finding allowing a divorce has been made, and one of the parties, believing the divorce to be immediately in effect, remarries before a decree of divorce is entered, such party or his administrator may maintain a petition for an amendment of the record by an entry of a decree of divorce as of the date of the finding authorizing it.   *Tuttle* v. *Tuttle,* 219.

## MASTER.

### (*See Court* 1.)

## MASTER AND SERVANT.

### 1. LIABILITY OF MASTER FOR INJURIES TO SERVANT.

#### a. For Negligence.

#### i. Master's Duty to Furnish Safe Instrumentalities.

A master's duty to provide his servant with reasonably safe instrumentalities for the prosecution of his work is non-delegable.   *Pickett* v. *Company,* 244.

Hence, such duty is not discharged by supplying the servant with a rethreaded bolt and nuts of too large a thread to be used upon it, whereby under pressure the rethreaded bolt was stripped by the nut, and caused a loaded iron shelf to fall and injure the servant's hand.   *Ib.,* 244.

Where the repair of a machine is not of a simple nature, incidental to its operation, but requiring mechanical skill, the master is liable for the negligence of the mechanic making the repair.   *Ib.,* 244.

The negligence of an employee, a millwright and electrician, who while removing machinery disconnected a cable and left the end so insecurely suspended that the cable's weight dragged its end through a hole in the floor thereby injuring another servant on the floor below, was the negligence of the master and not merely that of a fellow-servant in performing a detail of the service.   *Moore* v. *Company,* 332.

Instructions to the millwright and electrician in such case being merely a general injunction to be careful, impliedly authorized him to choose his own method and to execute it in his own way carefully; and by such injunction the master adopted whatever method such employee adopted together with the consequences of his choice of improper method.   *Ib.,* 332.

Where danger anticipable by the master is created by the usual process of the work, his duty is to take precautions to avoid the danger or to warn the servant of it.   *Ib.,* 332.

#### ii. Assumption of Risk.

Where injuries result to a servant from a peril which he understands, plus other dangers of which he is ignorant, the doctrine of assumption of risk does not bar his recovery.   *Pickett* v. *Company,* 244.

A servant assumes the risk of those dangers incident to his employment of which he is informed or which ordinary care would disclose.   *Stone* v. *Johnson,* 329.

A servant who with full knowledge of the danger of an unlighted stairway, and not called upon to act in any emergency, voluntarily chose to grope her way

through an unlighted hall leading thereto assumed the risk of falling down the stairway. *Ib.*, 329.

A servant assumes only the risks ordinarily incident to the employment but not those unnecessarily augmented by a specific want of care of the master unless the servant is charged with knowledge thereof. *Moore v. Company*, 332.

A servant does not assume a risk where he neither knew of it nor could have learned of it by the use of reasonable care. *Ib.*, 332.

### b. Under Workmen's Compensation Act.

*(Findings as to future disability when not conjectural, see Procedure, 7-h-ii.)*

### i. To what Employments Applicable

The workmen's compensation act does not apply to one doing work wholly of an agricultural nature upon a farm with a truck, where none of the work done on the farm has any substantial similarity to work in a shop, mill or factory except in purely incidental matters. *Merchants Mutual Casualty Co. v. Drown*, 363.

Where a workman's employment does not bring him within the compensation act, his unsuccessful petition for compensation will not bar a subsequent action at common law. *Davis v. Company*, 520.

The acceptance of the act by an employer gives him no advantage in respect to the claim of a servant as to whom the act is inapplicable. *Ib.*, 520.

### ii. Election by Workman: Recission.

Rescission of an election to claim workmen's compensation may be granted where the election by the administrator of the employee was made in reliance upon an untrue statement made by the employer's superintendent whereby the administrator, believing that full information had been thus imparted, was induced to believe that contributory negligence on the part of the decedent was the only cause of his death. *Ahearn v. Company*, 48.

Though an employer when requested is under no duty to furnish information to assist the employee in making such election, misinformation as to a material fact given by the employer's representative, though not an agent for such purpose, is ground for rescission of an election made through reliance thereon. *Ib.*, 48.

### iii. Aggravation of Previous Defect or Ailment.

Under the workmen's compensation act an aggravation of a previous physical defect or chronic ailment is compensable if accidental traumatic injury to other parts of the body caused such aggravation, though the parts affected by such defect or ailment received no such injury. *Vallee v. Company*, 285.

### iv. Computation of Compensation.

Certain evidence afforded the court a sufficient basis for a conclusion as to the duration of a disability both in its total and partial aspects. *Vallee v. Company*, 285.

An allowance of as much weekly compensation for partial as for total disability and to such an extent that the weekly allowance for partial disability combined with the probable weekly earning capacity during its period equals the full weekly earnings preceding the accident is not contrary to P. L., *c.* 178, *ss.* 21, 23.   *Ib.*, 285.

### 2. LIABILITY OF MASTER TO THIRD PARTIES.

*(See also Agency.)*

A master is not liable for the negligent operation by a servant of his own car, though about his master's business, if the manner of use and the operation and management of the car is entirely left to the discretion of the servant.  *Hutchins* v. *Insurance Co.*, 79.

In such case the fact that the master carried insurance against his own liability for the negligence of his employees in the operation of their cars is irrelevant on the issue of the master's liability.   *Ib.*, 79.

## MOTOR VEHICLES.

*(Constitutionality of regulatory legislation, see Constitutional Law 2, 5.*
*Lien for Repairs, see Lien.)*

### SECURITY TO PERSONS INJURED WHEN REQUIRED.

A statutory provision that a motor vehicle may not be operated upon the public highways until adequate provision has been made for compensation to persons injured wrongfully thereby is a valid law; and the requirement of insurance or security may be made to depend upon contingencies.   *Rosenblum* v. *Griffin*, 314.

Laws 1937, *c.* 161 requiring the security to be furnished by the owner or operator of a motor vehicle involved in an accident without regard to his fault, though discriminating among innocent persons as between those escaping and those not escaping accident, is not unconstitutional as an unequal regulation of a guaranteed right but is merely the definement of one of the conditions or terms upon which the privilege of operating vehicles on the highways may be given or withheld.   *Ib.*, 314.

After a motor vehicle accident in this state, a foreign corporation owning the truck involved therein, upon notification filed certain proof of financial responsibility for accidents in this state pursuant to Laws 1937, *c.* 161, *s.* 6, which was rejected by the Commissioner of Motor Vehicles.

The subject of the financial responsibility of interstate motor carriers having been fully dealt with by the federal statute and the rules promulgated thereunder by the Interstate Commerce Commission, supplementary as well as conflicting regulations of the same subject by the states are precluded by the Federal Constitution.   *University Overland Express* v. *Griffin*, 395.

A requirement of insurance approved by the Commissioner of Motor Vehicles against liability for the results of operations in a foreign state demanded by him under Laws 1937, *c.* 161, *ss.* 1, 6 is an unconstitutional attempt to regulate interstate commerce.   *Ib.*, 395.

## MUNICIPAL CORPORATIONS.

### 1. ACTIONS BY TOWN TO BE IN ITS NAME.
#### (See Actions.)

### 2. REGULATION BY CITIES OF RATES OF FARE TO BE CHARGED BY OPERATORS OF TAXICABS.

By P. L., c. 54; s. 12, PAR. VI, the legislature has constitutionally authorized cities to regulate the rates of fare to be charged by operators of taxicabs "for the conveyance of persons for hire from place to place within" their limits. *State v. Guertin*, 126.

The regulatory powers conferred by P. L., c. 54, s. 12, PAR. VI, are not limited to horse-drawn vehicles but may be exercised by cities in respect to taxicabs. *Ib.*, 126.

A provision in an ordinance requiring that taxicabs be equipped with taximeters is a regulation reasonably necessary to insure adherence to rates of fare which are either prescribed by a city or established by the carrier. *Ib.*, 126.

An ordinance requiring the licensing of taxicabs, fixing their rates of fare and requiring a taximeter is not discriminatory though "cars for hire used . . . at marriages or funerals or christenings or . . . ceremonial parades" or "sightseeing purposes" are exempted from the requirement of a taximeter. *Ib.*, 126.

### 3. LIABILITY FOR NEGLIGENCE WHEN ACTING IN A PRIVATE PROPRIETARY CAPACITY: EXERCISE OF GOVERNMENTAL FUNCTIONS.

A city, in furnishing water to its inhabitants at established rates, acts in a private proprietary capacity and may be held liable for an injury caused by the negligent maintenance of its water system. *Shea v. Manchester*, 547.

In an action by a pedestrian against a city for injuries received from stumbling over the cap of a water shut-off pipe near the edge of the sidewalk, the question was for the jury whether the city had sufficient notice that such caps became elevated because of frost or other weather conditions. *Ib.*, 547.

A municipality is engaged in the performance of a public governmental function when destroying insect pests as required by P. L., c. 190, ss. 1, 3 within certain areas inclusive of highway locations. *Gilman v. Concord*, 182.

Though the main objective of that statute was prevention of the spread of the nuisance yet its suppression within the highway limits is a form of highway maintenance. *Ib.*, 182.

Municipalities are liable for damage caused to neighboring property by negligent highway construction and maintenance. *Ib.*, 182.

Hence a municipality is liable for negligently using an insecticide in spraying trees situated within a highway whereby the spray falls upon the land of an abutter and thereby poisons his poultry. *Ib.*, 182.

### 4. POWER OF MUNICIPALITY TO HOLD PROPERTY IN TRUST.

Under P. L., c. 42, s. 23 a town or city may properly hold as trustee only those trust funds which as a town or city it has the power to administer. *Keene v. School District*, 477.

Under that act a city or town is authorized to act as a trustee only when it is the beneficiary of the trust. *Ib.*, 477.

Under P. L., *c.* 42, *s.* 18 a bequest to a city to be expended by it for promotion of higher education is for a purpose "foreign" to the city's "institution" and "incompatible with the objects of" its organization. *Ib.*, 477.

Bequest of a fund to a town "to be forever held in trust, the income from the same may be used as may be deemed for the best interest of said town." No power is thereby given to anyone other than the voters to determine what use shall be made of the income. *Simpson's Petition*, 550.

## MUNICIPAL COURT.

Under P. L., *c.* 337, *ss.* 1, 5, 10; Laws 1903, *c.* 21, *s.* 5, a municipal court or justice of the peace has authority to issue a commission to take depositions in a case pending before it. *Wessells* v. *Company*, 230.

## NEGLIGENCE.

*(See also Tort.)*

*(By persons using Highways, see Highways.* 2.

*Of Railroad in Operating Train at Grade Crossing, see Railroads* 4-*a.*

*Of Master toward servant and others, see Master and Servant.*

*Action in Emergency, see Highways* 2-*d*-ii.)

### 1. DUE CARE COMMENSURATE WITH EXPECTABLE RISK.

Due care requires the protection of another only against perceivable or expectable risks of injury, and hence the actor is liable only for such harm as results from exposing another to such risks. *Loughlin* v. *Johnson*, 191.

### 2. PROXIMATE CAUSE: CAUSAL CONNECTION OF NEGLIGENT ACT WITH INJURY.

#### a. In general.

Causal connection between the negligence complained of and loss incurred must be proved, but physical causation need not always be proved by an eye witness to that fact, and a finding upon the issue of causal connection may be made as an inference from evidentiary facts. *Emery* v. *Company*, 165.

When causes calculated to produce a certain result are shown to be in operation at a given time the inference is permissible that the natural result in fact followed. *Ib.*, 165.

The improbability of any other explanation may serve as an exclusionary premise to strengthen the force of a deduction. *Ib.*, 165.

The issue whether the setting of fire to a shingle roof was caused by cigarette stubs dropped by workmen thereon was properly submitted to the jury with instructions to consider all the surrounding circumstances including the location of the fire when discovered, the acts of workmen either before or after the fire, and the presence or absence of other agencies which may have caused the fire. *Ib.*, 165.

Certain evidence justified the conclusion that the officers of a corporation knowing that its workmen were accustomed to smoke when at work, failed to take adequate precautions to prevent the practice of that habit when likely to damage the property of third persons. *Ib.*, 165.

### b. Multiple Causation.

Instructions that the question for determination "is whether the death of" A, a person of advanced years with chronic ailments, "was directly caused by the injuries she sustained as a result of this accident," and further that A's advanced years and impaired health would not relieve the defendant from liability for the consequences of a negligent act, correctly presented the question of multiple causation and with sufficient clearness for the undertanding of the jury. *Atherton* v. *Rowe*, 196.

### 3. CONTRIBUTORY NEGLIGENCE.

*(In actions between users of highways, see Highways 2-b, d, e, f-ii.)*

*Contributory negligence of person injured at railroad grade crossing, see Railroads 2.*

*Imputation of wife's negligence to husband while driving his car not allowed to defeat his action for damaging the car, see Highways 2-f-ii.)*

### a. In general.

The question whether an owner of a building seeing workmen smoking on his roof was negligent in failing to make protest to them was a question for the jury. *Emery* v. *Company*, 165.

In an action by a parent for injuring his four year old child by the negligent operation of a motor vehicle on the highway, the question should have been submitted whether the parent had exercised reasonable care for the child's protection when upon the highway unattended. *Bullard* v. *McCarthy*, 158.

Though the plaintiff knew the location and condition of the cap of a water shut-off pipe near the edge of a sidewalk and stumbled thereon, being momentarily forgetful thereof, she was not at fault as a matter of law. *Shea* v. *Manchester*, 547.

### b. Of Infant.

In an action by a minor for injuries received by falling from a truck used for carrying the students at the defendant's school, the facts that other boys had climbed on the same truck in the same manner just before the plaintiff, and that the supervising teacher had not yet arrived, did not compel the conclusion that the plaintiff must have fully understood the danger he encountered from an unexpected starting of the truck while he was climbing into it. *Beardsell* v. *School*, 459.

### c. Doctrine of last clear chance.

The last clear chance doctrine is inapplicable where the evidence does not permit the finding that the defendant was aware that he alone could take saving action. *Legere* v. *Company*, 423.

Such awareness on the defendant's part is not established merely by breach of a duty to be aware; nor where the finding would be wholly speculative that his observation showed him that the plaintiff could do nothing to save himself. *Ib.*, 423.

Nor does the doctrine apply where the evidence is insufficient to show, to reasonable satisfaction, that the defendant was unduly slow in taking action. *Ib.*, 423.

The last chance rule requires that there be a clear opportunity to avoid the accident. *Ib.*, 423.

### 4. LIABILITY OF OWNERS OF PREMISES.

Case, against the owner of a store for injuries received by one entering therein and falling on a waxed floor which had become slippery from water dripping off umbrellas and rubbers of previous visitors. The evidence justified a finding that the defendant was chargeable with the duty of anticipating the danger of slipping on such a floor and of taking measures of prevention. *Williamson* v. *Company*, 216.

Where invitation to enter a dangerous place is extended by the owner he is not relieved from liability by the invitee's notice and appreciation of the danger. *Ib.*, 216.

An invitee does not assume the risk and is without fault, if he carefully incurs a known danger. *Ib.*, 216.

### 5. PROPRIETOR OF PRIVATE SCHOOL.

In an action by a minor, for injuries received by falling from a truck used for carrying the students at the defendant's school there was evidence which warranted the conclusion that the defendant's driver was negligent in starting the truck while the plaintiff was climbing into it by stepping on a wheel and before the customary inspection by a teacher to ascertain that the boys were safely on the truck before it started. *Beardsell* v. *School*, 459.

### 6. LIABILITY OF PERSON CONDUCTING PUBLIC SHOW WHERE DANGEROUS GAME IS PLAYED.

One who conducts a public show which includes a dangerous game played by children on horseback is bound to exercise due care to enforce a rule which he had adopted against their carrying whips, although there is elsewhere no general rule that whips shall be prohibited in such game. *Smith* v. *Hooper*, 452.

## NEGOTIABLE INSTRUMENTS.

### 1. CONSTRUCTION.

Parol evidence cannot be received to vary or control the settled legal import of a commercial instrument. *Merrimack River Sav. Bank* v. *Higgins*, 154.

Negotiable paper is to be construed like other contracts except as controlled by the negotiable instruments law. *Record* v. *Company*, 1.

When two or more persons sign a document with no apparent difference in interest or application, the order in which they sign is of no effect in determining their legal obligations. *Ib.*, 1.

### 2. DEMAND NOTES.

A negotiable instrument payable on demand is, as regards the effect of the statute

of limitations upon the liability of maker and indorser, a promise to pay forthwith. P. L., c. 312, s. 7. *Merrimack River Sav. Bank* v. *Higgins*, 154.

A demand note may contain terms applicable after it becomes overdue, *e.g.* payment of interest or a provision for collateral security, but those terms neither fix nor defer maturity. *Ib.*, 154.

Hence an action against an accommodation indorser of a demand note who has waived demand and notice is barred after six years from its date, though the note is payable "with interest semi-annually." *Ib.*, 154.

### 3. INDORSER.

Where two indorsers of a negotiable instrument sign under the words "waiving demand and notice," both of them signing at the same time and before delivery to the payee, the waiver applies to both of them under P. L., c. 312, *ss.* 109, 110 and is not limited to the one whose signature immediately follows those words. *Record* v. *Company*, 1.

Section 110 of the statute does not prescribe any rule for construing the terms of the waiver by stating what signers below it agree to it. *Ib.*, 1.

When an indorser waives his special rights in respect of demand and notice or protest he is in the position of a surety or guarantor and whether or not he would expect that the time during which he might be sued runs from the date of his undertaking is immaterial. *Merrimack River Sav. Bank* v. *Higgins*, 154.

An indorser of a note secured by a mortgage in which he has not joined may plead the six year statute of limitations and is not affected by P. L., c. 329, *s.* 5. *Ib.*, 154.

## PAUPER.

### SETTLEMENT.

Under Laws 1933, c. 142, the provision that "any person of the age of twenty-one years who shall have had his domicile in any town ... for five consecutive years shall thereby gain a settlement in such town," changes the requirements for acquiring a settlement not derivatively obtained; but does not expressly or impliedly declare that a settlement is lost which had been gained before the passage of the act. *Opinion of the Justices*, 563.

Under *ss.* 2 and 3 of the act a settlement thereby acquired is lost by abandonment of the domicile for five consecutive years or by assistance furnished to one as a pauper for five consecutive years after passage of the act, or by abandonment of the domicile for less than five years by removal from the State. A settlement acquired before the act will be lost in the ways therein specifically provided. *Ib.*, 563.

A settlement which had been gained under P. L., c. 105, *ss.* 1, *par.* ix, 2, 8 is not lost by assistance furnished during the five year period following June 1, 1933 unless one "has been assisted as a pauper for five consecutive years" thereafter as provided by Laws 1933, c. 142, *s.* 8. *Ib.*, 563.

A settlement in good standing when the act of 1933 was passed is not lost by subsequent relief furnished unless the relief is extended from time to time during a consecutive five year period. *Ib.*, 563.

## PROBATE LAW AND PROCEDURE.

### BOND OF ADMINISTRATOR.

*(Contribution between Sureties, see Surety 2.)*

P. L., *c.* 310 authorizing the Probate Court to permit the substitution of a new probate bond and in its discretion to discharge the surety in the original bond "from all further responsibility" empowers that court to discharge such surety from liability for future devastavits but not for those committed before such discharge.　*Century Indemnity Co.* v. *Casualty Co.*, 121.

In the statutory form of bond of an administrator to administer the estate (P. L., *c.* 299, *s.* 13) the condition is a continuing one from the date of his appointment and hence the bond is breached when the administrator first converts the funds, though that devastavit actually occurred before the execution of the bond. *Ib.*, 121.

## PROCEDURE.

*(Amendment, see Amendment.)*

### 1. ELECTION OF REMEDIES.

There can be no election between alternative remedies unless both are available. *Davis* v. *Company*, 520.

### 2. CHALLENGE.

A challenge to a juror not for principal cause but only to the favor, presents no question of law but only one of fact for the trial court.　*Hazen* v. *Corporation*, 522.

Challenges to the favor are waived if not made before trial.　*Ib.*, 522.

### 3. BURDEN OF PROOF.

On the trial of an issue by the court, compliance with a request for a ruling as to the burden of proof may be inferred from the conduct of the trial and the findings.　*Aetna Life Ins. Co.* v. *Chandler*, 95.

In a petition by an insurer for a declaratory judgment to determine coverage the burden of proving coverage is upon the claimant.　*Ib.*, 95.

Where the party having the burden of proof fails to sustain it the court has discretionary power to reopen the case and receive further evidence.　*Ib.*, 95.

A verdict will not ordinarily be ordered in favor of the party who has the burden of proof; nor for the plaintiff merely because the defendant offers no evidence. *Buffum* v. *Buffum*, 210.

The party not having the burden of proof may assume it by opening and closing the case.　*Hartford Accident &c. Co.* v. *Lougee*, 222.

On the issue of *devisavit vel non* the executor has the ultimate burden of proving that the will was the free and voluntary act of the testator.　*Ford* v. *Ford*, 292.

### 4. INFORMAL TRIAL OR HEARING.

A discussion between a referee and counsel at which the parties themselves are present may constitute an informal hearing.　*Lehigh Navigation &c. Co.* v. *Company*, 274.

## 5. TRIAL OF SEVERAL ACTIONS TOGETHER.

The trial court has discretionary power to order that two cases against the same defendant for negligently causing the death of different persons in the same accident shall be tried together; and also to rule that each plaintiff may make an opening statement, may argue to the jury, and examine witnesses under reasonable limitations to prevent duplication of their testimony.   *Carbone* v. *Railroad*, 12.

## 6. NONSUIT.

### a. Permissible Inferences of Fact.

(*See also infra* 8-*h*-ii.)

Where all the witnesses to a grade crossing collision are dead the inference that the plaintiff's intestate looked and listened before driving thereon may be drawn from evidence of his habitual care in approaching railroad tracks.   *Carbone* v. *Railroad*, 12.

In such case the fact that occupants of a truck which immediately preceded the decedent's automobile heard no warning signals justified the conclusion that atmospheric and other physical conditions prevented him from hearing them. *Ib.*, 12.

And in such case, the decedent's failure to see the train might properly be ascribed to atmospheric conditions impairing visibility, to physical objects obstructing his view and to his attention to the truck which preceded him. *Ib.*, 12.

In such case a traveler unfamiliar with the road, if hearing a whistle, might readily have inferred that the whistle came from a train on another track which he had already crossed.   *Ib.*, 12.

An effect which is not the natural and probable consequence of the course of action which preceded it, which under the circumstances does not ordinarily follow and which cannot be reasonably anticipated therefrom, an effect which the actor did not intend to produce and which he cannot be charged with the design of producing is produced by accidental means.   *Simoneau* v. *Insurance Co.*, 402.

If the effect of conduct is disproportionate to the voluntary act, the jury may logically infer that something independent of such act is causal.   If a cause thus inferable remains unknown and unexplainable the inference may nevertheless be drawn that the unusual result was caused by an accidental means.   *Ib.*, 402

### b. Scintilla of Evidence.

The driver and another witness in the cab of a truck approaching a railroad grade crossing with which they were familiar testified that the window was open one-half inch on the driver's side and that they were then listening for a whistle but heard none.   There was here more than a *scintilla* of evidence that the whistle was not blown.   *Lavallee* v. *Railroad*, 323.

### c. Party when concluded by his own testimony.

A party's testimony at a former trial of his conduct in an accident was held not so clear and definite as to preclude other evidence by him at a new trial.   *Jackson* v. *Smart*, 457.

A party is not concluded by his own testimony where it is not clear and definite as to an occurrence, nor unless relating to a matter about which he could not be honestly mistaken. *Putnam* v. *Bowman*, 200.

*d. Disbelief of testimony does not warrant a finding of the contrary as the fact.*

Though testimony is disbelieved by the trier, a finding contrary to such testimony is not thereby warranted in the absence of other evidence supporting such finding. *Loughlin* v. *Johnson*, 191.

### 7. MOTION TO SET ASIDE VERDICT.

*a. Refusal to give Requested Instructions.*

i. Waiver by non-exception.

Requests for instructions denied without exception are waived. *Daniels* v. *Barker*, 416.

ii. Requests substantially complied with.

A request that "while the burden of proving contributory negligence is upon the defendant yet the jury is entitled to find contributory negligence if all the evidence would warrant such a finding" was substantially complied with by a charge otherwise adequate and which made no suggestion that a verdict on any issue could be based upon only part of the evidence. *Kelley* v. *Lee*, 100.

A request for instructions is not to be denied because it contains an incorrect element of minor consequence. *Smith* v. *Hooper*, 36.

A verdict will not be set aside for refusal to charge as requested if the court states the request in a modified form and the party takes no exception to the charge as given but merely excepts to the refusal to give certain requests. *Ib.*, 452.

A failure to give the exact words of a requested instruction is not error if there is substantial compliance with the request. *Beardsell* v. *School*, 459.

A request for instructions in terms of abstract rules of law is complied with by a charge giving a concrete application of those rules in language clear and unambiguous to the minds of the jurors. *Wood* v. *Insurance Co.*, 524.

iii. Requests based upon part only of the evidence.

A request is properly refused if based upon part only of the material evidence or if it gives undue prominence to certain portions to the exclusion of other parts equally material. *Putnam* v. *Bowman*, 200.

iv. If denial of a request is proper, a wrong reason therefor is immaterial.

If the denial of a request for findings and rulings is proper, a wrong reason therefor is inconsequential. *Vallee* v. *Company*, 285.

v. Incomplete request requiring specific instruction.

The denial of a request for an instruction is error if the request though incomplete brings to the court's attention a matter which requires a specific instruction. *Nickerson* v. *Bentley*, 533.

Though a request for instructions contains an inaccurate statement of the law, proper instructions should be given to cover the substantial question presented thereby. *Kelley* v. *Lee*, 100.

vi. General instruction insufficient where specific instruction is asked for
and is required.

Where in an action for negligence the plaintiff claims that injury was caused by
the defendant's negligently permitting a specific act to be done and the de-
fendant requests an instruction that if such act was not in fact done there
should be a verdict for him, the request should be given; and is not satisfied
by merely a general instruction that causation of the accident must be due to
defendant's negligence. *Smith* v. *Hooper*, 36.

The denial of a request for an instruction on an issue not submitted is not error.
*Carbone* v. *Railroad*, 12.

### b. *On Ground of Error in Charge.*
#### i. Waiver: exception too general.

An instruction to which no exception is taken becomes the law of the trial. *Wil-
liamson* v. *Company*, 216; *Wood* v. *Insurance Co.*, 524.

A general exception to a charge will not be sustained upon grounds not brought
to the court's notice. *Wood* v. *Insurance Co.*, 524.

An objection to a charge made in a discussion between court and counsel is un-
availing if exception is not formally taken thereto. *Leavitt* v. *Bacon*, 383.

A charge having submitted without exception the question of the husband's
damages for injury to his car, for his expenses resulting from his wife's injuries
and for his loss of her services, is not open to attack on a motion to set aside
the verdict for failure to exclude damages for his loss of *consortium*. *Ib.*, 383.

#### ii. Written instructions without notice to counsel.

It is not essential that counsel be present during communications between the jury
and the court, and when the court is not in session written instructions may be
sent to the jury without notice to counsel, which are to be returned and filed
with the verdict. *Daniels* v. *Barker*, 416.

The jury's failure to return such written questions and answers with their verdict
is non-prejudicial upon subsequent filing thereof. *Ib.*, 416.

A party who having gained knowledge of such communication between the court
and the jury fails to obtain complete information of its terms cannot claim
prejudice if he fails to show that inquiry would not have resulted in such in-
formation. *Ib.*, 416.

#### iii. Uncertainty in charge.

In an action for negligently causing injuries, the defendant after excepting to the
denial of his motion for a nonsuit offered no evidence to dispute liability but
took exception to the denial of a motion for a directed verdict. The charge
being uncertain as to whether the issue of liability was submitted or only the
issue of damages a verdict for the plaintiff was set aside. *Buffum* v. *Buffum*,
210.

Where a charge in its entirety fairly neutralizes any misunderstanding likely to
result from a particular expression the exception thereto is unavailing. *Daniels*
v. *Barker*, 416.

Instructions that the question for determination "is whether the death of" A,
a person of advanced years with chronic ailments, "was directly caused by the

injuries she sustained as a result of this accident," and further that A's advanced years and impaired health would not relieve the defendant from liability for the consequences of a negligent act, correctly presented the question of multiple causation and with sufficient clearness for the understanding of the jury. *Atherton* v. *Rowe*, 196.

### c. Instructions requested by Jury in absence of Judge.

A statement to the jury by the Presiding Justice that if they needed further instructions he would be on hand to receive their questions for only a short time, if made in the presence of counsel and without objection and exception is not ground for setting aside a verdict. *Daniels* v. *Barker*, 416.

And so also of a complaint in such case that the justice after his announced departure was not available to restate his charge on the jury's request for the same or a copy of it and that a copy was not read to them. *Ib.*, 416.

### d. On Ground of Prejudicial Evidence.
### i. In general.

Where incompetent evidence which may be prejudicial is received, the verdict will be set aside. *Daniels* v. *Barker*, 416.

In an action upon a fire insurance policy, the mere fact that one charged as an incendiary has enemies who have made threats against him does not operate to weaken the force of the evidence of his guilt; proof of innocence is not enhanced by proof merely that another has a motive to commit the wrong. Hence the jury having been permitted to employ such evidence as a reason for finding the plaintiff innocent, the improper prejudice of the evidence justifies setting aside the verdict. *Wood* v. *Insurance Co.*, 524.

Where a dictionary is furnished to the jury by the officer in charge without a party's consent, the verdict will be set aside as unfair because the assistance thus furnished by the officer was unlawful and because use of the evidence cannot be found to have been harmless. *Daniels* v. *Barker*, 416.

Where testimony is nothing more than the restatement of evidence already admitted without objection, no prejudice results from such testimony. *Clapp Co.* v. *McCleary*, 65.

A witness' answer does not constitute reversible error merely because it contains unsolicited comment or information or illustration, in the absence of exception taken on the ground of the prejudicial effect of such testimony. *Bullard* v. *McCarthy*, 158.

The exclusion of evidence upon objection that it is immaterial and prejudicial is no ground for exception, if the evidence might properly have been excluded as cumulative. *Hackett* v. *Railroad*, 514.

A denial of a motion to set aside a verdict on the ground of prejudice and because the trial was unfair is equivalent to a finding that the jurors were not swayed by prejudice and that the trial was fair. *Bullard* v. *McCarthy*, 158.

### ii. Evidence withdrawn and instruction to disregard.

In the trial of an indictment, the respondent being a priest claiming to have taken vows of celibacy, a photograph had been admitted which tended to show that he had at one time been married. The photograph having been withdrawn

later and the jury told to disregard all reference to it, the presumption is that the instruction was observed. *State* v. *Slocinski*, 262.

### e. On Ground of Jury's Error in Considering the Evidence: Passion, Prejudice or Mistake.

Where the evidence is conflicting, a finding of the trial court that the jury was not swayed by passion and prejudice will not be disturbed by the Supreme Court. *Smith* v. *Hooper*, 452.

Where a verdict is unreasonable in amount, the error is presumed also to extend to the issue of liability, unless there is proof that such issue was determined on other grounds. *Hackett* v. *Railroad*, 514.

Upon a motion to set aside a verdict, the trial court properly found that the jury failed to intelligently consider the evidence laid before them and to apply the evidence to the law as given in relation to damages. *Ib.*, 514.

Where it appears that an error of the jury may have affected all the issues, there must be a complete new trial unless it clearly appears that the error did not extend to all the issues tried. *Ib.*, 514.

Where a compromise verdict on the question of liability has been concurred in by some members of the jury in consideration of the smallness of the damages the only power of the court is to order a complete new trial upon all of the issues. *Ib.*, 514.

A denial of a motion to set aside a verdict on the ground of prejudice is an implied finding that the trial was fair. *Davidson* v. *Corporation*, 535.

### f. As against the Weight of the Evidence.

Upon a motion to set aside a verdict as against the weight of the evidence, its weight is not necessarily to be estimated by the number of witnesses upon the one side and the other. *Smith* v. *Hooper*, 452.

Whether a verdict was conclusively against the weight of the evidence is a question of fact and if the trial court's finding is a reasonable one it will not be disturbed. *Hosmer* v. *Federico & Son*, 378.

### g. Argument of Counsel.

#### i. Prejudicial Arguments.

An argument that an insured had no motive for burning insured premises because the value of the property was in excess of the insurance by one-third to over one-half was unsupported by the evidence. *Wood* v. *Insurance Co.*, 213.

A statement by counsel of material facts of which there is no evidence is reversible error in the absence of a finding that the statement did not render the trial unfair. *Carbone* v. *Railroad*, 12.

The fact that such a statement is in the form of questions to witnesses which they are not permitted to answer does not alter the above rule where the evidence fails to sustain the statement. *Ib.*, 12.

An argument which materially exaggerates the speed required to cover a given distance in a given time is prejudicial. *Goddard Realty &c. Co., Inc.* v. *Bugbee*, 34.

If an unwarranted inference from the evidence be made by counsel and tacitly sanctioned by the court the verdict will be set aside. *Carlin* v. *Drake*, 52.

## ii. Permitted arguments.

The argument that the opposing party failed to call available witnesses of a trans-
action because their testimony would have been unfavorable is justified if the
witnesses were apparently accessible.   *Beardsell* v. *School*, 459.

In argument a reference may be made to an object in plain sight of the jury by
way of appropriate illustration.   *Williamson* v. *Company*, 216.

An argument that horses rear against the force of gravity and, rearing, are apt to
fall by the same force states no more than a matter of common knowledge.
*Smith* v. *Hooper*, 36.

A misstatement of evidence in argument is not ground for setting aside a verdict
where the error is so insignificant as to cause no prejudice.   *Trudeau* v. *Com-
pany*, 83.

In a complaint upon the vaccination statute the argument of the solicitor that
when a law does not please a person he has no right to ask a jury to permit him
to violate it was warranted by the evidence and proper.   *State* v. *Drew*, 54.

An error of counsel, *arguendo*, in attributing certain testimony to the wrong wit-
ness was harmless where the fact claimed was testified to by another witness
and the trial court denied a motion to set the verdict aside as prejudicial or
unfair.   *Bullard* v. *McCarthy*, 158.

An argument that the driver of a car on a rainy, misty night was momentarily
blinded by the lights of an approaching car was justifiable as stating a matter
of common knowledge, though no direct evidence was offered of the blinding
effect of the lights.   *Putnam* v. *Bowman*, 200.

The statement in argument that a horse was frightened by seeing a boy coming
toward him with a whip in his hand was justified by evidence that "the horse
saw him coming and saw the whip in his hand."   *Smith* v. *Hooper*, 452.

And so of the further statement that the position of one horse was in front of
another where the testimony was "in front little bit to the right."   *Ib.*, 452.

Counsel referred in argument to a medical expert as a "fifty dollar a minute
man" and no evidence justified the remark except that the expert proposed
to charge fifty dollars if not detained in court over half an hour.   There being
nothing to indicate that the jury ignored the court's warning to disregard the
remark the verdict was not disturbed.   *Davidson* v. *Corporation*, 535.

## iii. Curing misstatement of evidence.

Where after argument and objection, counsel asks the jury to take their own recol-
lection and then properly restricts the argument to the evidence, an objection
thereto is unavailing.   *Beardsell* v. *School*, 459.

Whether the withdrawal of an unwarranted argument and instructions to disre-
gard it cured the prejudice engendered is a question of fact for the trial court.
*Goddard Realty &c. Co., Inc.,* v. *Bugbee*, 34.

An argument that the opposing side "had the witnesses that were available with
the resources at their command" having been withdrawn, and the jury in-
structed to disregard it, the court's denial of the motions for mistrial and to
set aside the verdict is tantamount to a finding that the remark was so fully
and fairly withdrawn as not to have influenced the jury; and the remark not
being a direct appeal for a verdict on the ground of either poverty or re-

sources, the trial court's finding of no prejudice was not error.   *Kelley* v. *Lee*, 100.

Upon a statement of the evidence by counsel and objection made, he stated that he left to the jury's recollection what the actual evidence was and without their taking his version of it.   The court's allowance of the argument was construed as permitting consideration of the evidence only if counsel's recollection accorded with the jury's independent recollection of it.   *State* v. *Slocinski*, 262.

Where a jury has presumably followed the court's instruction and disregarded a misstatement of the evidence by counsel, a finding that the trial was fair is unnecessary.   *Ib.*, 262.

### iv.  Court's allowance of argument.

The trial court by permitting an argument to stand and granting an exception thereto impliedly sanctions the statements and inferences contained therein. *Carlin* v. *Drake*, 52.

After objection to argument and discussion thereon the court's statement "Exception noted" was equivalent to a final ruling that the argument might stand.   *Wood* v. *Insurance Co.*, 213.

### v.  Objection to argument how taken.

An objection to argument made before a sentence is completed is unavailing, if the argument up to the moment of the interruption fairly states the law. *Leavitt* v. *Bacon*, 383.

### h.  Insufficiency of Evidence to Sustain Verdict; Conjectural and Permissible Inferences of Fact.

### i.  In general.

A jury is not required to believe the testimony of a plaintiff as to the extent of his personal injuries simply because he is not directly contradicted.   *Trudeau* v. *Company*, 83.

In an action upon a fire insurance policy where the defendant introduced certain evidence of the plaintiff's motive and of his preparation for the fire, his testimony that he had not set the fire was susceptible of reasonable belief.   *Wood* v. *Insurance Co.*, 524.

Though a plaintiff in contradictory statements testified falsely, it is not thereby conclusively established that his testimony was intentionally false.   *Ib.*, 524.

In a minor's action a motion to set aside the verdict in his favor was rightly denied where no request had been made for instructions as to the minor's contributory negligence.   *Leavitt* v. *Bacon*, 383.

### ii.  Conjectural and permissible inferences of fact.
#### (See also supra 6-a.)

A verdict cannot be sustained if based upon a finding which is a physical impossibility.   *Brown* v. *Mailhot*, 240.

A jury will not be permitted to speculate on the market value of property.   *Wood* v. *Insurance Co.*, 213.

A jury's examination of the property on a view, with only such information of

value as the other evidence furnished, was an insufficient basis for their opinion as to market value. *Ib.*, 213.

Though a plaintiff is not permitted to recover for an injury upon the strength of one inference from the evidence, in the face of others of equal probability, direct evidence as to how the accident occurred will, if believed, counterbalance the other possible inferences. *Pickett* v. *Company*, 244.

Mere proof of hostile feelings toward another person and of ability and opportunity to alienate the affections of a third person toward him is not enough to sustain an inference that such influence has in fact been exerted. *Sedlewicz* v. *Milaisky*, 269.

In an action for alienation of a wife's affections from her husband certain evidence failed to establish any causal connection between the hostile attitude of the defendant toward the plaintiff and the loss by the latter of his wife's affections, the evidence further failing to show that the wife's decision to quit her husband was the result of anything done or said by the defendant. *Ib.*, 269.

Though a conjectural finding of the duration of the effects of an injury is not permissible, a finding may be reasonable which might have been conjectural if more available evidence had been produced. *Vallee* v. *Company*, 285.

Though a forecast as to future disability lacks reliability yet it will be sustained if there is a bare excess of probability. *Ib.*, 285.

As a matter of common knowledge considerable time is usually required for recovery when a bodily condition produces a mental ailment, which in turn operates to produce a continuance of the bodily condition, and hence an estimate of the period for such recovery is not altogether problematical though involving a matter of special knowledge of which no evidence is introduced. *Ib.*, 285.

A finding that total disability would continue for nearly another year is not a finding that it would then cease to be total but that it would probably continue at least until that time; and a finding of the probable term of partial disability implies no more than conjectural uncertainty beyond it. *Ib.*, 285.

The mind as well as the body may be hurt as the outcome of a traumatic injury, and if the conditions in the course of recovery therefrom so affect the mind as to retard recovery, the resulting prolongment of the period of disability may be found due to the accident. *Ib.*, 285.

A jury may properly and without speculation find that either of two theories of causal connection between an injury and subsequent symptoms were true, where either theory might explain the symptoms, and all other theories of causal connection are eliminated; and such a finding is not a choice between the two theories as to the original cause of the symptoms. *Leavitt* v. *Bacon*, 383.

Where the evidence warrants the findings that as a result of an accident the plaintiff suffered either traumatic neurosis or traumatic labyrinthitis and that her symptoms could be caused by nothing but the accident, it is immaterial that experts cannot determine which of the two conditions existed. *Ib.*, 383.

In the course of establishing causation, evidence of the possibility of a certain cause is not inadmissible provided later evidence justifies a finding of its probability. *Ib.*, 383.

Certain evidence of a blow received in a collision followed by a disability, properly attributable to such a blow, justified the conclusion in the absence of evidence

of any other blow that the disability was caused by the blow received. *Ib.*, 383.

In an action against a railroad for injuries received by collision at a grade crossing a finding would have been wholly conjectural that due care would have informed the engineer that the truck was out of control in season to have averted the accident. *Lavallee* v. *Railroad*, 323.

### *i. On Ground of Inconsistency between Verdicts.*

No inconsistency exists between the denial of recovery to the wife on the ground of her contributory fault in driving her husband's car and the verdict in favor of her husband for his property damage; for both the wife's and the defendant's fault contributed to the collision and her fault was non-imputable to her husband. *Leavitt* v. *Bacon*, 383.

### *j. Inadequacy or Excessiveness of Verdict.*

A verdict may be set aside by the Presiding Justice as excessive without making a finding as to the proper amount of the damages, and without ordering a *remittitur*. *Sylvain* v. *Peterman*, 249.

Excessive verdicts in favor of a husband and wife awarding damages to the wife for pain and suffering from physical injuries, and awarding damages to the husband for loss of the wife's services and *consortium* and for medical services were properly set aside. *Ib.*, 249.

Though the Presiding Justice has not passed upon a motion to set aside a verdict on the ground of its inadequacy, the Supreme Court, where the questions properly transferred necessitate an examination of the evidence in relation to damages, may determine whether the amount of the verdict is in accord with a substantial portion of the evidence, and if so the verdict will not be disturbed. *Atherton* v. *Rowe*, 196.

The plaintiff's ailment and incapacity to perform more than light work justified the trial court's refusal to set aside a verdict of $1500 for the husband's loss of her services and his expenses for her medical attendance and including a slight damage to his car. *Leavitt* v. *Bacon*, 383.

The refusal of the Presiding Justice to set aside a verdict as excessive showed no abuse of discretion. *Davidson* v. *Corporation*, 535.

Certain evidence warranted the finding by the trial court that the damages awarded were inadequate in view of the decedent's earning capacity. *Hackett* v. *Railroad*, 514.

### *k. Motion to Set Aside Verdict as Against the Law and the Evidence.*

A motion to set a verdict aside as against the law and the evidence presents no questions not raised on the exceptions to a denial of motions for a nonsuit and a directed verdict. *Shea* v. *Manchester*, 547.

### 8. MOTION FOR NEW TRIAL.

#### *a. On Ground of Newly Discovered Evidence.*

The questions of fact involved in a motion for a new trial are entirely within the jurisdiction of the Superior Court. *Jackson* v. *Smart*, 457.

New evidence which is not cumulative but presents an entirely different situation from that disclosed at the trial may justify the granting of such a motion. *Ib.*, 457.

*b. Terms of granting.*
*(See infra 12.)*

### 9. MOTION FOR MISTRIAL.

*a. Conversation Between Juror and Witness.*

A motion for a mistrial on the ground of a conversation between a witness and a juror was properly denied where the conversation in no way related to the case on trial, where the witness had acted in good faith, and the trial court found that the party's rights were not prejudiced. *Salisbury Beach Associates* v. *Littlefield,* 447.

*b. Conduct of Officer in Charge of Jury.*

It is an issue of fact whether the impropriety of permitting a court officer, who has testified in a case, to be in charge of the jury after the case is submitted to them renders the trial unfair. *Brown* v. *Smith,* 133.

### 10. MOTION FOR RE-TRIAL ON CERTAIN ISSUE.

Whether justice requires a retrial of the issue of damages is a question for the Superior Court. *Bullard* v. *McCarthy,* 158.

### 11. GENERAL AND SPECIAL FINDINGS AND VERDICTS.

A general finding includes a finding of all the special facts necessary to sustain it, in the absence of contrary proof. *Welch Company* v. *State,* 428; *Hope Shoe Co.* v. *Company,* 178; *Ingram* v. *Railroad,* 277.

Where the special facts found compel as matter of law a general finding that one party is indebted to the other a judgment will be ordered in favor of the latter for the amount due. *Crossman* v. *Quimby,* 91.

A finding as to the deficiency of gravel placed in a basement may be made upon the balance of probabilities as disclosed in the evidence of numerous borings through the cement and gravel, where there is no finding that such borings are of no aid in determining the average deficiency of gravel throughout the whole basement. *N. E. Redlon Co.* v. *Corporation,* 137.

Whether a jury shall be required to return with the general verdict answers to specific questions is a matter of expediency for the determination of the Presiding Justice. *Putnam* v. *Bowman,* 200.

### 12. COSTS: ATTORNEYS' FEES.

Upon a motion for a rehearing on the ground of mistake, counsel fees commensurate with the additional services required by the rehearing may be awarded to the opposite party as terms of granting the motion. *Barclay* v. *Club,* 500.

### 13. BILL OF EXCEPTIONS.

A plaintiff's bill of exceptions containing exceptions to the charge on the subject of damages should not be disallowed on the ground that the verdict being for the defendant rendered the exceptions inconsequential, if the bill also includes exceptions relating to liability. *Daniels* v. *Barker,* 416.

## 14. In Supreme Court.

### a. Re-examination of Questions Decided on Former Transfer.

Questions of law once decided will not be reëxamined upon a subsequent transfer of the same case, especially where equity and justice do not require it. *Vallee* v. *Company*, 558.

### b. Exceptions not Called to Attention of Court Below.

The Supreme Court will not consider grounds of exceptions not specified or called to the trial court's attention. *Bullard* v. *McCarthy*, 158.

A verdict will not be set aside upon a point disclosed by the evidence but not raised at the trial. *Emery* v. *Company*, 165.

### c. Exceptions how Waived.

An exception to the denial of a motion to set aside a verdict is considered waived if not referred to by brief or in oral argument. *Bullard* v. *McCarthy*, 158.

### d. Agreed Case.

Whether a party is entitled to be relieved from an agreed case may be raised only upon petition to the Superior Court. *Jesukevich* v. *Laporte*, 242.

### e. Proper Exercise of Discretion by Superior Court.

It is not orderly procedure for the Supreme Court to pass upon the issue of proper exercise of discretion by the Superior Court unless it appears that discretion has been exercised. *Vallee* v. *Company*, 285.

Where a record as transferred is ambiguous and tending somewhat to show that discretion was not exercised, the appropriate procedure is to return the case to the Superior Court for an order or for an amendment. *Ib.*, 285.

### f. Bill of Exceptions.

Averments of fact in a bill of exceptions allowed by the trial justice are to be taken as facts found by him and "conformable to the truth of the case" under P. L., c. 315, s. 8. *Daniels* v. *Barker*, 416.

### g. Transfer of All Evidence is Necessary to Permit a Decision on its Sufficiency to Sustain a Finding.

Where the transfer of a case does not include a full record of the evidence at the trial, the defendant is not entitled to a ruling of the insufficiency of the evidence to support a finding for the plaintiff on the issue to which the omitted evidence relates. *Smith* v. *Hooper*, 36.

### h. Questions of which a Determination will Probably be Useful on a Retrial.

The Supreme Court in ordering a new trial on exceptions relating to liability and fairness of trial may also give consideration to exceptions relating to the measure of damages if their determination will be useful in the further litigation. *Daniels* v. *Barker*, 416.

## PROPERTY.

### (*Zoning, see Zoning.*)

## PUBLIC SERVICE COMMISSION.

### 1. CHARTER DUTIES OF RAILROADS.

The statute creating the Public Service Commission (P. L., c. 247), did not repeal "the special powers granted" to railroads "by their charters and the general laws of the state" (*Ib.*, ss. 5, 6); and their existing charter duties were meant to be retained and continued including such regulatory orders for railroad service as the legislature by charter or general law had previously prescribed. *State* v. *Railroad*, 59.

Hence, a finding by the Public Service Commission that complete "cessation of passenger service . . . is not unreasonable" does not relieve a railroad of its charter obligation to run one train "each way at least once a day." *Ib.*, 59.

### 2. ENFORCEMENT OF PROVISIONS OF MOTOR VEHICLE CARRIER ACT.

#### (Laws 1933, c. 106.)

#### (*See also Constitutional Law* 6.)

Though Laws 1933, c. 106; *Ib.*, c. 169 does not in terms give the Public Service Commission authority to prescribe rules and regulations for the carriers to which it applies, the legislative intention is to commit the enforcement of its provisions to the commission by its promulgation of appropriate rules and regulations. *Welch Company* v. *State*, 428.

Under Laws 1933, c. 106, s. 11 the Public Service Commission has the power to suspend or revoke the certificate of registration of a motor carrier for a violation of that act. *Ib.*, 428.

Suspension of registration certificates is not provided as a punishment for violation of the rules of the commission. *Ib.*, 428.

Certain evidence warranted the finding of the commission that a carrier had "required or permitted" its drivers to operate for excessive hours in violation of Laws 1933, c. 106, s. 8. *Ib.*, 428.

Such a finding is not invalidated by the absence of evidence proving the non-existence of exculpating facts, particularly when such matters are peculiarly within the carrier's knowledge and full opportunity to present them to the commission was afforded. *Ib.*, 428.

Where there is evidence that a carrier has violated both the act and the commission's orders, the suspension of its registration will be presumed to have been based on its violation of the act rather than of the orders. *Ib.*, 428.

## RAILROADS.

### 1. PUBLICATION OF TARIFFS: SPECIAL CONTRACTS TO TRANSPORT.

Where a railroad has published no tariff covering the movement of circus or show trains, as unit shipments, the inference cannot be drawn that a circus or show was afforded an opportunity to contract with such railroad as a common carrier of such unit shipment at a higher rate and thus to receive the security of a common carrier's liability. *Bernardi Greater Shows, Inc.* v. *Railroad*, 490.

Where a railroad does not hold itself out as a common carrier of show trains, a special contract by a circus or show company with a railroad is a contract with a private carrier; and the parties so contracting are free to make their own bargain and to release the carrier from liability for its own negligence. *Ib.*, 490.

Notwithstanding such special contract with a show company the employees of its concessionaires, who traveled on the train under agreement of their employers with the show company, were not parties or privies to such special contract between that company and the railroad, but were its invitees to whom it owed the duty of exercising reasonable care for their protection. *Ib.*, 490.

As such invitees they were not chargeable with notice of the provisions of both contracts nor by accepting transportation with knowledge of such provisions would they release the railroad from liability for failure to exercise reasonable care. *Ib.*, 490.

The railroad in such case, having assumed the task of inspecting the cars after their movement over its lines had begun, could be found to be under the duty to provide an adequate inspection notwithstanding the show company by the special contract had agreed that "each car ... shall be of a character and in order suitable for such movement." *Ib.*, 490.

### 2. CHARTER OBLIGATION TO MAINTAIN MINIMUM OF PASSENGER SERVICE.

#### (See also Public Service Commission 1.)

A provision in a charter of a railroad fixing the minimum amount of passenger train service to be rendered is a legislative determination of reasonable service to be maintained in any event; and courts cannot alter that standard because not adapted to existing conditions. *State v. Railroad*, 59.

In such charter provision requiring daily service, the limit of permissible non-compliance with that standard is the specified exception of "unavoidable accidents and contingencies"; and a further exception that daily service is also excepted where there is no reasonable public need therefor cannot be implied. *Ib.*, 59.

### 3. DUTY TO TRANSPORT PASSENGERS SAFELY.

Certain evidence justified the finding that a railroad's inspection of cars had been inadequate. *Bernardi Greater Shows, Inc. v. Railroad*, 490.

Certain evidence permitted the conclusion that if proper "key-retainers" had been in place upon the departure of the train they would not have worked out of place on the road before the accident. *Ib.*, 490.

Evidence of such defective key-retainers, of defects in the road-bed, of the speed of a train and of its derailment, together with the opinion of an expert as to the cause thereof warranted submission to the jury of the issue of the causal relation between the foregoing circumstances and the derailment. *Ib.*, 490.

### 4. LIABILITY FOR INJURIES AT GRADE CROSSINGS.

#### a. In General.

A railroad is chargeable with the knowledge of members of a train crew that owing to a detour the traffic over a grade crossing had greatly increased. *Carbone v. Railroad*, 12.

The driver and another witness in the cab of a truck approaching a railroad grade crossing with which they were familiar testified that the window was open one-half inch on the driver's side and that they were then listening for a whistle but heard none. There was here more than a *scintilla* of evidence that the whistle was not blown. *Lavallee* v. *Railroad*, 323.

The knowledge of a locomotive engineer that a truck was approaching the crossing imposed no duty upon him to stop the train until he knew or should have known that the truck would not stop, the engineer being unable to see that the truck was sliding rather than rolling towards the crossing and was out of control. *Ib.*, 323.

In such case the knowledge of the engineer that the truck was approaching the crossing imposed no duty upon him to stop the train until he knew or should have known that the truck would not stop, the engineer being unable to see that the truck was sliding rather than rolling towards the crossing and was out of control. *Ib.*, 323.

If in such case a whistle had been blown at the whistling post the inference cannot reasonably be drawn that if the truck driver had heard it he would have stopped immediately, or reduced his speed at a point three hundred and fifty feet from the crossing, from which point the train was still invisible and the visibility of the crossing was doubtful. *Ib.*, 323.

In such case a finding would be wholly conjectural that due care would have informed the engineer that the truck was out of control in season to have averted the accident. *Ib.*, 323.

### b. Contributory Negligence.

If on the issue of contributory negligence the finding is reasonable that the plaintiff used some care, the question whether such care as he exercised was sufficient is for the jury. *Austin* v. *Railroad*, 309.

In such case the failure of the plaintiff to see the railroad-crossing signs might reasonably be found to have resulted from either the poor visibility caused by a storm, the distractions of traffic or difficulties incident to the nature of the highway. *Ib.*, 309.

A passenger in an automobile who falls asleep is not thereby guilty of contributory negligence as a matter of law. *Ib.*, 309.

Where all the witnesses to a grade crossing collision are dead, the inference that the plaintiff's intestate looked and listened before driving thereon may be drawn from evidence of his habitual care in approaching railroad tracks. *Carbone* v. *Railroad*, 12.

In such case the fact that occupants of a truck which immediately preceded the decedent's automobile heard no warning signals justified the conclusion that atmospheric and other physical conditions prevented him from hearing them. *Ib.*, 12.

And in such case, the decedent's failure to see the train might properly be ascribed to atmospheric conditions impairing visibility, to physical objects obstructing his view and to his attention to the truck which preceded him. *Ib.*, 12.

In such case a traveler unfamiliar with the road, if hearing a whistle, might readily have inferred that the whistle came from a train on another track which he had already crossed. *Ib.*, 12.

### c. Special Crossing Protection.

The need of special protection to travelers at a grade crossing, supplementary to the statutory warnings, is to be determined by the special and unusual dangers of that crossing. *Carbone* v. *Railroad*, 12.

A mere change in weather conditions whereby driving on the highway becomes more hazardous is not such a special and unusual danger. *Chevalier* v. *Railroad*, 367.

A recent increase in highway traffic over a grade crossing, resulting from a detour, together with a failure to lessen the speed of trains warranted an inference that special crossing protection was required. *Carbone* v. *Railroad*, 12.

In an action by a highway traveler against a railroad for negligently failing to guard a grade crossing by more warnings than a disk and cross-arm signs, the evidence warranted the inference that a light and bell signal would have been seen and responded to by the plaintiff in time to have avoided the accident by an earlier application of the brakes. *Austin* v. *Railroad*, 309.

Certain evidence was insufficient to justify a finding that the maintenance of an automatic warning signal at a crossing was required. *Chevalier* v. *Railroad*, 367.

Other evidence was inadequate to establish that the plaintiff's attention would have been attracted sooner by an automatic signal than by the headlight of the approaching engine and the ringing of its bell. *Ib.*, 367.

## REAL ACTIONS.

### WRIT OF ENTRY.

In a writ of entry the issue is whether the demandant has proved title, and not whether the tenant has or has not title. *Salisbury Beach Associates* v. *Littlefield*, 447.

Where the demandant's claim of title required it to establish that the *locus* was not marsh land at the date of a certain conveyance, a motion of the demandant for a directed verdict and a later motion to set the verdict aside were properly denied. *Ib.*, 447.

## RECEIVER.

A receiver has only the title of the corporation whose affairs he administers. *Bellows Falls Trust Co.* v. *Company*, 551.

## SALES.

### TITLE TO RAW MATERIALS SHIPPED FOR MANUFACTURE INTO GOODS.

Where raw materials were shipped for manufacture under a verbal agreement that the bailor should advance the amount of the bailee's pay-rolls and that "all of the output . . . would be shipped" to the bailor, the conclusion was warranted that the parties intended that title to the materials should remain in the bailor and also that title to each increment thereof by process of manufacture should become vested in him. *Hope Shoe Co.* v. *Company*, 178.

## SCHOOLS.

### ATTENDANCE OF CHILD UNVACCINATED.

There is no unqualified constitutional right of either a parent or his child that the latter attend the public schools; and a reasonable requirement such as vaccination before attendance, as provided in P. L., *c.* 123, *s.* 1, is constitutional. *State v. Drew*, 54.

Under P. L., *c.* 123, *ss.* 1, 3 it is the legal duty of a parent to have his child vaccinated and send it to school unless exempted by the act; and a parent who refuses to comply with the statute is liable to the penalty under section 3.   *Ib.*, *54.*

## SET-OFF.

### 1. TIME FOR FILING PLEA.

A plea of set-off, filed three years after the entry of the plaintiff's action and not until more than six years after some of the counter-indebtedness had accrued, was rightly rejected by the trial court in accordance with the discretion conferred by Rule 22 of the Superior Court.   *Lehigh Navigation &c. Co.* v. *Company,* 274.

### 2. EQUITABLE SET-OFF.

Where no basis exists for equitable set-off, recoupment is available to a defendant only when the demands of both parties arise out of the same contract or transaction; and under the statute of set-off a claim for unliquidated damages cannot be maintained.   *Lehigh Navigation &c. Co.* v. *Company,* 274.

In an action at law upon a contract brought by a non-resident, the defendant will be allowed to set off a claim for unliquidated damages growing out of the breach of an independent contract between the same parties.   *Arcadia Knitting Mills* v. *Company,* 188.

## SLAUGHTER HOUSES.

(*See Animals* 2.)

## STARE DECISIS.

(*See Court* 2.)

## STATE OF NEW HAMPSHIRE.

### WHEN ACTION NOT AGAINST STATE.

When a law is challenged as unconstitutional, the claim is that the law is void and hence that no law has been enacted; when in such case suit is brought to restrain the agents of the State from putting the void legislation into effect the proceeding is not one to which the State is a party.   *Conway* v. *Board,* 346.

## STATE LIQUOR COMMISSION.

### REGULATORY POWER. RIGHT TO SEARCH.

*(See also Constitutional Law 3.)*

The commission's regulatory power was conferred solely to enable it to enforce its own control of liquor traffic and does not include the power to assist other law enforcement agencies by placing instruments in their hands to aid such enforcement. Hence, a regulation is invalid which requires a licensed club to furnish a key of its premises to the local police for entrance at any time into the club's premises. *Manchester Press Club* v. *Commission*, 442; *Pulaski Club* v. *Commission*, 559.

The legislature in authorizing "necessary and proper" regulations to carry out the act, and in permitting entrance into and requiring frequent inspection by the commission of premises where liquor is sold, did not intend that their regulations, otherwise promotive of provisions of the act, should be deemed *ultra vires* merely because the licensee is thereby subjected to undesired and unwarned visits from the commission or its agents. *Ib.*, 442; 559.

## STATUTE OF FRAUDS.

### 1. SALE OR CONVEYANCE OF LAND.

The statute of frauds, P. L., c. 327, s. 1, does not apply to a decree of court made in conformity to a verbal agreement by the parties in court, whereby to compromise the suit the plaintiff should convey to the defendant certain land not involved in the litigation and also rectify lines of other land. *Perley* v. *Bailey*, 359.

### 2. PROMISE TO PAY THE DEBT OF ANOTHER.

The provision of the statute of frauds requiring that a promise to pay the debt of another shall be in writing has no application unless such other person is indebted to the plaintiff who seeks to recover on the defendant's verbal promise. *Brown* v. *Churchill*, 441.

## STATUTES CITED.

| NEW HAMPSHIRE STATUTES. | | 1876, c. 34, s. 1 | 478 |
|---|---|---|---|
| Laws 1841, c. 605 | 565 | 1889, c. 86, s. 3 | 24 |
| 1844, c. 128, s. 13 | 129 | 1899, c. 64, s. 1 | 25 |
| 1849, c. 861 | 478 | c. 86, s. 1 | 224 |
| 1851, c. 1124 | 382 | 1901, c. 67 | 25 |
| 1855, c. 1666, s. 1 | 129 | 1903, c. 21, s. 1 | 232 |
| 1861, c. 2482 | 565 | s. 5 | 232 |
| 1868, c. 1, s. 48 | 23 | 1905, c. 109 | 25 |
| 1869, c. 13 | 24 | 1909, c. 78 | 25 |
| 1870, c. 1, s. 6 | 24 | 1911, c. 164 | 61 |
| s. 7 | 24 | c. 180, s. 1 | 224 |

| | | |
|---|---|---|
| 1913, *c.* 57, *s.* 1 | | 120 |
| *c.* 78, *s.* 1 | | 224 |
| *c.* 145, *s.* 11 | | 61 |
| 1915, *c.* 47 | | 26 |
| *c.* 162 | | 478 |
| *s.* 1 | | 479 |
| 1917, *c.* 43 | | 224 |
| 1925, *c.* 92, *s.* 3 | | 116 |
| 1927, *c.* 54 | | 510 |
| *c.* 54, *s.* 3 | | 316 |
| *c.* 76 | | 71 |
| *s.* 2 | 72, 103, 131, 387 | |
| *s.* 3 | 73, 202, 203, 205 | |
| 1929, *c.* 31 | | 353 |
| *c.* 43, *s.* 1 | | 131 |
| *c.* 86 | 121, 348, 561 | |
| *c.* 189, *ss.* 1, 2 | | 316 |
| 1930, *c.* 4 | 41, 284 | |
| 1931, *c.* 81 | 134, 136 | |
| *c.* 84, *ss.* 1, 10 | | 317 |
| *c.* 148 | | 43 |
| *c.* 164, *s.* 2 | | 232 |
| *s.* 3 | | 230 |
| 1933, *c.* 105, *s.* 2 | 202, 203 | |
| *c.* 106, *ss.* 2, 3 | | 430 |
| *s.* 8 | 430, 435 | |
| *ss.* 8, 11 | | 437 |
| *ss.* 11, 12 | | 438 |
| *c.* 142 | 563, 564, 565 | |
| *s.* 1 | | 564 |
| *c.* 143 | | 353 |
| *c.* 169 | | 430 |
| *s.* 2 | | 438 |
| 1934, *c.* 3 | | 443 |
| *s.* 8 | 443, 444 | |
| *s.* 12 | 444, 445 | |
| *s.* 28 | | 444 |
| *s.* 37 | 444, 445 | |
| 1935, *c.* 99 | | 562 |
| *c.* 121 | | 349 |
| *ss.* 17, 18 | | 353 |
| 1936, Sp. Ses., *c.* 1 | | 353 |
| 1937, *c.* 107 | | 353 |
| *c.* 118 | | 349 |
| *s.* 3 | | 353 |
| *c.* 161 | 315, 396 | |
| *ss.* 1, 6 | | 396 |
| *s.* 5 | | 316 |
| *s.* 21 | | 320 |

| | | |
|---|---|---|
| *s.* 28 | | 316 |
| *c.* 178 | | 562 |
| *c.* 180 | | 352 |
| *c.* 190 | | 349 |
| *c.* 202 | | 564 |
| *c.* 208, *s.* 2 | | 320 |

REVISED STATUTES.

| | |
|---|---|
| R. S., *c.* 188, *s.* 23 | 231 |

COMPILED STATUTES.

| | |
|---|---|
| C. S., *c.* 150, *s.* 31 | 129 |
| *c.* 200 | 231 |

GENERAL STATUTES.

| | |
|---|---|
| G. S., *c.* 149 | 129 |
| *c.* 159 | 28 |
| *c.* 210, *s.* 1 | 231 |

PUBLIC STATUTES.

| | |
|---|---|
| P. S., *c.* 40, *s.* 5 | 478 |
| *c.* 169, *s.* 14 | 24 |

PUBLIC LAWS.

| | | |
|---|---|---|
| P. L., *c.* 2, *s.* 3 | | 4 |
| *c.* 42, *s.* 4, xxv | | 183 |
| *s.* 18 | 478, 541 | |
| *s.* 23 | | 480 |
| *s.* 30 | | 127 |
| *s.* 48 | | 114 |
| *ss.* 48-68 | | 485 |
| *ss.* 48, 54, 60 i, ii, iv | 487 | |
| *ss.* 48, 49, 50, 51, 52, 60, 60 ii | | 486 |
| *c.* 42, *s.* 50 | 115, 116 | |
| *s.* 56 | | 489 |
| *s.* 60, *cl.* iii | | 117 |
| *s.* 67 | | 484 |
| *c.* 47, *s.* 30 | | 300 |
| *c.* 50, *s.* 2 | | 478 |
| *c.* 54, *s.* 1 | 127, 183 | |
| *s.* 12, *par.* vi | | 127 |
| *c.* 60, *s.* 22 | | 284 |
| *c.* 72 | | 476 |
| *s.* 1 | | 235 |
| *s.* 33 | | 236 |
| *c.* 90, *s.* 1 | | 534 |
| *c.* 99, *s.* 1, *par.* vi | | 53 |

| | |
|---|---|
| *c.* 102, *s.* 11 | 134 |
| *s.* 17 | 85 |
| *s.* 17 | 317 |
| *c.* 103 | 71 |
| *s.* 6 | 202 |
| *s.* 10 | 53 |
| *ss.* 10, 13 | 131 |
| *s.* 18 | 72 |
| *s.* 18 | 394 |
| *s.* 18, vii | 131 |
| *c.* 105 | 563 |
| *s.* 1, *par.* ix, *s.* 9 | 564 |
| *ss.* 2, 3 | 564 |
| *c.* 116 | 353 |
| *c.* 118, *ss.* 1, 2 | 55 |
| *c.* 123, *s.* 1 | 55 |
| *c.* 143, *s.* 20 | 151 |
| *c.* 150, *ss.* 23, 24 | 380, 381 |
| *c.* 162, *s.* 29 | 489 |
| *c.* 166, *s.* 19 | 179, 180 |
| *c.* 178 | 520, 521 |
| *s.* 1 | 364 |
| *ss.* 21, 23 | 290 |
| *s.* 24 | 291 |
| *s.* 37 | 374 |
| *c.* 179 A, *s.* 9 (G) | 562 |
| *c.* 190, *s.* 1 | 183 |
| *s.* 3 | 183 |
| *c.* 213, *s.* 17 | 555 |
| *c.* 217, *s.* 35 | 47 |
| *s.* 36 | 46 |
| *c.* 238, *s.* 10 | 439 |
| *ss.* 38, 39 | 279 |
| *c.* 247, *ss.* 5, 6 | 62 |
| *c.* 268 | 341 |
| *c.* 271, *s.* 16 | 29 |
| *c.* 272, *s.* 1 (iii) | 27 |
| *c.* 275, *ss.* 15, 16 | 225 |
| *ss.* 18, 19 | 224 |
| *s.* 60 | 26, 28 |
| *c.* 281, *s.* 15 | 560 |
| *c.* 286, *s.* 5 | 376 |
| *c.* 287, *ss.* 3-5 | 377 |
| *c.* 285, *s.* 1 | 152 |
| *ss.* 3, 6, 9 | 152 |
| *s.* 10 | 153 |
| *c.* 288, *s.* 2 | 305, 306 |
| *ss.* 14-19 | 120 |
| *c.* 291, *s.* 16 | 294 |

| | |
|---|---|
| *c.* 299, *s.* 13 | 123 |
| *c.* 302, *ss.* 9, 10, 11 | 330 |
| *s.* 11 | 309 |
| *s.* 12 | 517 |
| *c.* 307, *s.* 6 | 532 |
| *c.* 310 | 124 |
| *ss.* 4, 5 | 121, 124 |
| *c.* 312, *s.* 7 | 156 |
| *s.* 109 | 3 |
| *s.* 110 | 3 |
| *ss.* 187-189 | 509 |
| *c.* 315, *s.* 7 | 10 |
| *s.* 8 | 420 |
| *c.* 316, *s.* 7 | 275 |
| *c.* 323, *s.* 15 | 232 |
| *c.* 327, *s.* 1 | 360 |
| *s.* 2 | 441 |
| *c.* 328, *s.* 13 | 16, 76 |
| *c.* 329, *s.* 3 | 157 |
| *s.* 5 | 157 |
| *c.* 334, *s.* 9 | 536 |
| *c.* 335, *ss.* 7-13 | 276 |
| *ss.* 7-13 | 189 |
| *c.* 336, *s.* 8 | 278 |
| *s.* 33 | 215 |
| *c.* 337, *s.* 1 | 231 |
| *s.* 2 | 231 |
| *s.* 5 | 231 |
| *s.* 10 | 231 |
| *s.* 15 | 232 |
| *c.* 379, *s.* 2 | 120 |
| *c.* 386, *ss.* 5, 6 | 528 |

INDIANA STATUTES.

| | |
|---|---|
| Rev. St. (1881) *s.* 5119 | 306 |

MAINE STATUTES.

| | |
|---|---|
| R. S., *cc.* 90, 95, 96 | 12 |

MASSACHUSETTS STATUTES.

| | |
|---|---|
| G. L., *c.* 90, *s.* 17 | 194 |
| *c.* 140, *s.* 96 | 357 |
| *s.* 100 | 357 |
| *s.* 103 | 357 |
| *s.* 108 | 358 |
| *c.* 255, *s.* 5 | 358 |

UNITED STATES STATUTES.

Fed. Motor Carrier Act, 1935, *s.*
    204 (a) (2)                              435
34 Stat. 1415                                436
39 U. S. Stat. 756                           472

49 U. S. C. A. 1938 Supp.                    396
49 U. S. Stat. 543-567                       396

VERMONT STATUTES.

G. L., *s.* 1903                             153

## STATUTORY CONSTRUCTION.

### 1. HISTORY AND PRACTICAL CONSTRUCTION.

The history of the enactment of statutes and their practical construction determine their interpretation regardless of any technical and ambiguous terms they contain.  *New York Life Ins. Co.* v. *Sullivan*, 21.

### 2. INTENT: STRICT CONSTRUCTION.

So-called rules of strict construction for certain classes of legislation are controlled by and subordinate to the principle that the ascertainment of the actual legislative intent is the only purpose and objective of proper construction. *Young Women's Christian Ass'n* v. *Portsmouth*, 40.

Significant words in a statute are not to be rejected or rendered ineffectual by construction.  *State* v. *Railroad*, 59.

### 3. SPECIFIED EXCEPTIONS.

Specified exceptions in a statute usually exclude others.  *State* v. *Railroad*, 59.

### 4. PRESUMPTION AGAINST RETROACTIVE OPERATION.

Though no question of vested rights is involved, the presumption is against the retroactive operation of a repealing statute as invalidating the results accrued under the operation of the repealed statute.  *Opinion of the Justices*, 563.

## SURETY.

### 1. SURETY CANNOT REQUIRE SUIT BY CREDITOR.

A creditor is not required on the request of the surety to pursue any of his remedies against the principal or to prove against his estate in bankruptcy.  *Crossman* v. *Quimby*, 91.

### 2. CONTRIBUTION BETWEEN SURETIES.

At common law the right of contribution between co-sureties does not arise from contract but on the ground that equality of burden as to a common right is equity; and hence contribution is predicated upon a common and equal footing of the parties as between each other.  *Century Indemnity Co.* v. *Casualty Co.*, 121.

The surety on the original administration bond of an administrator and the surety on a bond substituted therefor are both liable in equal degree for his devastavit committed before the execution of the latter bond; and are co-sureties with right of contribution though bound by different instruments.  *Ib.*, 121.

The loss in such case which must be equally divided between them, includes not only the sum converted with interest thereon but also costs in the discretion of the Superior Court and reasonable expenses incurred.  *Ib.*, 121.

Though an administrator after a devastavit fraudulently induces a second person to become substituted as his surety the loss will be apportioned between the sureties if the original surety is in no way implicated in the administrator's fraudulent act.  *Ib.*, 121.

### 3. OFFICIAL BONDS.

Sureties on official bonds are not released by the negligence or misconduct of other officials.  *Strafford* v. *Insurance Co.*, 297.

The surety on the bond of a tax collector, appointed for a specified year, is liable for his peculations of money collected under the warrant for that year although he pays over that money to cover a previous delinquency under a former warrant.  *Ib.*, 297.

Nor is such surety discharged because the collector failed to submit his tax book and lists to the treasurer for inspection and computation as required by P. L., c. 47, s. 30.  *Ib.*, 297.

## TAXATION.

*(Testamentary Instruction as to Burden of Taxes, see Wills 3.)*

### 1. CONSTRUCTION OF STATUTES.

Statutes imposing taxes are not as a matter of course to be strictly construed but the usual method of statutory construction is applied, namely, to ascertain what the legislature intended by its language.  *Kimball* v. *Potter*, 234.

### 2. TAX ON SUCCESSIONS.

An irrevocable trust created by a decedent in his lifetime whereby he received the income during life, the estate to terminate at his death and the principal to go to his nephews, is subject to a succession tax under P. L., c. 72, s. 1.  *Kimball* v. *Potter*, 234.

The transfer is not taxable until the property comes into the transferee's possession by reason of the transferor's death and the tax is to be imposed upon the full value of the property at that time whether it be more or less than at the date of the instrument creating the right to enjoyment.  *Ib.*, 234.

### 3. EXEMPTIONS.

Laws 1931, c. 148 leaves in force those exemptions from taxation granted by the legislature prior to 1931, and prescribes limitations of exemptions only in respect to subsequently acquired property.  *Young Women's Christian Ass'n* v. *Portsmouth*, 40.

### 4. CHARITIES.

The exemption statute (Laws 1930, c. 4) does not apply to all charities but only to those which are local and institutionally organized.  Religious and educational institutions are separately categoried.  An institution may be a public

charity though not included in the classification of "religious" or "educational" societies; and its activities in the fields of religion and education have evidentiary value to show its inclusion as a charitable organization within the act. *Young Women's Christian Ass'n* v. *Portsmouth,* 40.

An exemption of charitable institutions from taxation being granted, a condition is not thereby prescribed that only those institutions are exempted which meet a hard and fast definition of such an institution; and whether an institution is or is not charitable in character does not depend upon its exemption from taxation. *Ib.,* 40.

The general policy to tax all property justifies the rule that such policy will prevail if the policy to exempt has not been clearly exercised; but there is no rule that an exercise of the exemption power is to be regarded as doubtful when the intent to exercise it is clear. *Ib.,* 40.

Whatever the law regards as a charity public in its nature is relieved from taxation if it takes institutional form and is within the statutory exemptions of charities. *Ib.,* 40.

A charitable institution may be exempted from taxation though not engaged in any governmental function. *Ib.,* 40.

The constitutional mandate that no tax shall be so laid as to impose upon a tax-payer more than his share of the burden of taxation is not disregarded by an exemption which classification produces, provided the exemption serves the general welfare. *Ib.,* 40.

The Portsmouth Historical Society, a corporation "organized . . . to preserve, collect and perpetuate . . . historical facts, traditions, biography, features and possessions" of that city and vicinity and which maintains on exhibition antique furniture, books, pictures, manuscripts, &c., associated with the locality or relating to its early history, and in which corporation the stockholders have no pecuniary interest, is a charity exempt from taxation under P. L., c. 60, s. 22 as amended by Laws 1930, c. 4. *Portsmouth Historical Society* v. *Portsmouth,* 283.

A charge of admission fees which are expended to defray operating expenses does not affect the society's standing as a charity. *Ib.,* 283.

5. TAXPAYERS' SUIT TO RESTRAIN ILLEGAL EXPENDITURE.

An injury to taxpayers threatened by the exercise of invalid authority by agents of the State, assuming to take action thereunder, on behalf of the State, may be restrained upon a bill in equity by a single taxpayer to enjoin such illegal expenditure of the state funds. *Conway* v. *Board,* 346.

TORT.

(*See also Negligence.*)

1. TORT ACTION NOT MAINTAINABLE FOR NEGLIGENT
BREACH OF CONTRACT.

An action sounding in tort cannot be maintained for negligent failure to perform a contract. *Stone* v. *Johnson,* 329.

## 2. ALIENATION OF AFFECTIONS.

*(See Procedure 7-h-ii.)*

## 3. LIABILITY OF CONDUCTOR OF DANGEROUS GAME AT A PUBLIC SHOW.

One who conducts a public show which includes a dangerous game played by children is bound to exercise due care to enforce a rule which he had established for their safety. *Smith* v. *Hooper*, 36.

A horse show included a contest by children on horseback in which they endeavored to break with their hands toy balloons fastened to the back of each child. The proprietor of the show having established a rule prohibiting whips to be carried by the contestants, certain evidence justified the finding that he was negligent in not enforcing the rule and in permitting a whip to be carried by another contestant who struck the plaintiff's horse, causing it to rear and throw her. *Ib.*, 36.

## 4. LIABILITY OF PROPRIETOR OF PRIVATE SCHOOL FOR INJURY TO STUDENT.

*(See Negligence 5.)*

# TRUSTS.

*(Trusts created by Will, see Wills 2.)*

## 1. SUBSTITUTION OF TRUSTEE IN CASE OF VACANCY.

When there is a vacancy in a trusteeship, the trust is to be maintained and enforced by a substituted trustee with such powers as the due execution of the trust requires. *Fowler* v. *Hancock*, 301.

Devise to a named trustee "to hold, use . . . and expend for the benefit" of the testator's brother "in such manner and at such times as" the named trustee "shall deem proper." The trustee having resigned, the successor in the trust may expend for the brother's benefit so much as reasonable propriety requires. *Ib.*, 301.

In such case though the testator anticipated such judgment to be exercised by his named trustee, the personal confidence of the testator in him does not constitute a condition upon which the brother's beneficial right depends. *Ib.*, 301.

## 2. SCOPE OF BENEFIT INTENDED.

The provision "for the benefit" of the testator's brother may reasonably include the brother's benefit from having his minor children supported. *Fowler* v. *Hancock*, 301.

In such case the extent and character of the support furnished the children is measured by their reasonable needs, taking into account both the resources of the trust estate to supply other benefits to which the brother may be entitled and also other resources of the children if any. *Ib.*, 301.

## 3. WASTING PROPERTY.

If property held in trust to pay the income to one beneficiary for a named period and thereafter to pay the principal to another beneficiary is wasting property,

the trustee's duty is either to provide for amortization or to sell the property, unless the will manifests a different intention.   *Cadbury* v. *Parrish*, 464.

### 4. FOLLOWING TRUST FUNDS.

In a bill in equity by a depositor of an insolvent savings bank to establish that his deposit constituted a special trust fund by reason of the treasurer's non-disclosure of its insolvency, the plaintiff has the burden of identifying his deposit as part of the assets that came into the hands of the Bank Commissioner. *Emerson* v. *Bank*, 339.

Evidence that the plaintiff's deposit on the day of its receipt by the bank was placed in its account with a national bank wherein a balance largely in excess of the deposit was steadily maintained until the commissioner took possession of the assets, was not sufficient to so identify the deposit as to create a priority thereof as against other contributors to the fund in like circumstances with the plaintiff.   *Ib.*, 339.

The fact that the treasurer concealed the bank's insolvency from the plaintiff and directed a teller, innocent of that fact, to receive his deposit, gives the plaintiff no equity superior to others who also made their deposits to innocent tellers through whom the treasurer impliedly represented the bank's solvency by permitting them to receive all deposits tendered.   *Ib.*, 339.

Where in such case after the plaintiff's deposit has become part of a fund, the fund is reduced by a greater amount than the deposit, the plaintiff's deposit could not be clearly traced into the remainder of the assets received by the Bank Commissioner.   *Ib.*, 339.

Where the claim is made that a certain deposit can be followed into a fund and identified involves an unverifiable presumption as to the nature and source of subsequent withdrawals from the fund, the intermingled money does not permit of identification.   *Ib.*, 339.

### 5. PERSONAL LIABILITY OF TRUSTEE.

A trustee who assumes an obligation which by the terms of the trust is unauthorized becomes personally obligated.   *Brown* v. *Churchill*, 441.

### 6. TERMINATION OF TRUST: LAPSE.

The finding that a certain trust had been terminated and lapsed through inattention and failure to enforce it for over twenty years by those interested therein was reasonable.   *Moreau* v. *Loveren*, 470.

### 7. RESULTING TRUST TO DONOR UPON FAILURE OF THE DESIGNATED CHARITABLE USES.

A condition in a deed of gift that if "said granted premises shall be at any time used for any other purpose  than as above stated . . . the said granted premises shall at once revert to the grantors and their heirs and the estate of" the city "shall thereupon cease," when fairly construed, limits the condition to voluntary action of the city in violation of the terms of the trust; and hence if acquisition of the property by the State, through its exercise of eminent domain

renders the trust impossible of performance, the condition is not broken and the reverting clause of the deed becomes inapplicable. *State* v. *Corporation*, 538.

### 8. DOCTRINE OF CY PRES.

The doctrine of *cy pres* is applicable to charitable trusts when the instrument declares a general and primary purpose for the maintenance and continuance of the charity, and it has become impossible or impractical to execute a subordinate and secondary plan for the mode of administration or for features incidental to the general purpose. *State* v. *Corporation*, 538.

Where land had been conveyed to a city upon certain uses and trusts for library purposes, and the State took the land by eminent domain, the above doctrine was applicable to the above gift to the city; and its duty is to use the fund arising from the condemnation proceedings, supplemented by other required funds, toward the construction and maintenance of a new public library building, observing however all the terms of the trust as approximately and completely as is reasonable and by retaining those special features set forth in the deed as far as practicable. *Ib.*, 358.

## WATER RESOURCES BOARD.

### 1. CORPORATE EXISTENCE OF BOARD.

The board, like a municipality, has a distinct legal existence. *Conway* v. *Board* 346.

### 2. CONSTITUTIONALITY OF CREATION OF BOARD.

The statutes creating the Water Resources Board (Laws 1935, *c.* 121; Laws 1937, *c.* 118; Laws 1937, *c.* 190) are a valid exercise of the power of the State to promote the public welfare by providing for the conservation, development, storage, distribution and utilization of water and by enhancing the present and potential water power along rivers and streams. *Conway* v. *Board*, 346.

The provision that there may be private use of the power developed from storing water and employed in producing electric energy is not a forbidden aid to such users so long as the benefit to the user is not the primary objective of the plan, and if it includes incidentally an arrangement to obtain the benefit of the storage for the public and authorizes no unreasonable use at the expense of the State either in the charge for the increased power or in the price to the public of the product. *Ib.*, 346.

The enactments in question are not provisions for the aid of private business enterprises but for the general welfare, although incidentally benefiting certain individuals, and hence are constitutional. *Ib.*, 346.

Nor are the enactments invalid as being a delegation of primary legislative power; for a policy is declared, and a standard is prescribed for the administration of the law by discretionary functions, which though broad are auxiliary to the administrative authority of the Water Resources Board. *Ib.*, 346.

### 3. THE FINDING THAT A PROJECT IS OF PUBLIC USE AND BENEFIT.

Any particular project is within the public policy of enhancing the present and potential water power in the State if it is of public use and benefit; and that

issue is not one of law but of fact to be determined by the Governor and Council. *Conway* v. *Board*, 346.

A finding of public use and benefit cannot be made if the prospects are that the use and benefits to the public are less than the burdens to be assumed. *Ib.*, 346.

Upon the evidence submitted, the Governor and Council reasonably found that the Pittsburg plan constitutes a project of public use and benefit. *Ib.*, 346.

The fact that private users of the power developed from the water storage may derive incidental benefit as an inducement to contract for the stored water was reasonably found to be, not the inducement for the project in question, but merely a feature essential to make execution of the project feasible where flood control alone, though a present need, could be neither a self-supporting nor a self-liquidating project. *Ib.*, 346.

In the project in question a primary purpose to aid private industry is not necessarily proved merely because no present public need exists for the increased production of electric energy or because the potential need of it in a remote time is slight. *Ib.*, 346.

## WILLS.

### 1. ISSUE OF DEVISAVIT VEL NON.

On such issue the executor has the ultimate burden of proving that the will was the free and voluntary act of the testator. *Ford* v. *Ford*, 292.

A will induced by the testator's fear of another person and the fact that he made the will because he did not dare to do otherwise is void. *Ib.*, 292.

On such issue evidence of the petition of the testator for appointment of a conservator was properly admitted where the obtaining of that petition is attributable to the person charged with procuring the will. *Ib.*, 292.

On the issue of *devisavit vel non* the fact that the person charged with procurement of the will by undue influence was not present at its execution does not conclusively establish his non-coercion of the testator. *Ib.*, 292.

### 2. TRUSTS CREATED BY WILL: WASTING PROPERTY.

A will which directed the "net income from a trust," consisting of stock in coal mining properties, to be paid to a beneficiary for life with remainders in fee, contained no provision for amortization. The facts that the testatrix made her will in another state where the court had construed a will of her grandmother similarly worded in relation to the same mining stocks, was aware of that court's decision that no amortization was intended, together with the further fact that substantial reserves had been set aside to offset in part the depletion of coal deposits, and other circumstances in the testatrix's knowledge, showed that she intended no amortization. Hence all the dividends from the stock should be treated as income payable to the life beneficiaries. *Cadbury* v. *Parrish*, 464.

### 3. INSTRUCTIONS IN WILL AS TO BURDEN OF TAXES.

Instructions in a will as to the incidence of the burden of taxes are controlling. *Amoskeag Trust Co.* v. *College*, 471.

If the intention of a testator is ambiguous, the federal estate tax is not to be paid out of the estate and charged *pro rata* to the beneficiaries but constitutes a

charge against the estate which like other charges and expenses of administration is payable out of the residue after the payment of specific legacies and devises. *Ib.*, 471.

### 4. INTERPRETATION.
#### (See also Words and Phrases.)
#### a. Presumption against Partial Intestacy.

The presumption against partial intestacy is neither evidence nor of evidentiary value, but its sole function is to take the place of evidence of intention; and where there is either evidence or an inference from evidence bearing on a testator's intention the presumption is inapplicable. *Heffenger* v. *Heffenger*, 530.

#### b. Meaning of the expression "The rest."

A testatrix having an estate in remainder by devise from her mother, first bequeathed the property she had inherited from her father. Then to another person, she bequeathed "any scientific books he may find in my library, the rest to be divided between my sisters and brother" &c. The will had no residuary clause. By the words, "the rest," the testatrix referred only to the rest of her library and did not include the remainder derived from her mother but as to that she died intestate. *Heffenger* v. *Heffenger*, 530.

### 5. PETITION OF TRUSTEE FOR INSTRUCTIONS.
#### (See Equity 4.)

## WORDS AND PHRASES.

The exact meanings of "shall" and "may" as used in a statute are interchangeable when reasonably so required. *Stone* v. *Cray*, 483.

Words of generality following specific words are presumably intended to be applicable only to persons or things of the same general character or class with those specified. *Keene* v. *School District*, 477.

Words importing the singular number may extend and be applied to several persons or things. *Record* v. *Company*, 1.

The use of the word "shall" instead of "may" is not conclusive; and either of those words should be regarded as having the usual meaning of the other when that is required to give effect to other language to carry out the intention of the parties. *Smith* v. *Wetherell*, 106.

The literal meaning of words or phrases is not adopted when apparent intention is thereby defeated. *Ib.*, 106.

## ZONING.
#### (See also Constitutional Law 1, 2.)
### 1. PURPOSES OF ZONING REGULATIONS.
#### a. As Reducing Fire Hazard.

One of the purposes of zoning regulations is to secure "safety from fire" (P. L., c. 42, s. 50) and a regulation designed to restrict the number of families in one

house may reasonably be held to diminish that risk and to be valid notwithstanding other special regulations exist for fire protection. *Sullivan* v. *Corporation*, 112.

### b. As Preventing Impairment of Value of Other Property.

To prevent impairment of the value of other residential property is also one of the legitimate objects of zoning. *Sullivan* v. *Corporation*, 112.

### 2. SINGLE RESIDENCE DISTRICT.

A zoning ordinance providing that "in a single residence district . . . no building . . . shall be erected, altered or used except for . . . the following uses . . . single-family detached dwelling . . ." applies to the remodeling of a single-family residence to contain two separate tenements though there is no evidence that the owner has used, attempted to use or intends to use the premises for two tenements or for the purpose of renting any portion thereof, but only for the accommodation, without charge, of his immediate family when periodically visiting him. *Sullivan* v. *Corporation*, 112.

If the single-family restriction tends materially to promote the avowed purposes of the zoning statute the facts are immaterial that the occupants of the additional apartment are relatives or friends of the owner or pay no rent or do not occupy the premises for the entire year. *Ib.*, 112.

The provision of Laws 1925, *c.* 92, *s.* 3 that a zoning regulation "shall apply to any alteration of a building to provide for its use for a purpose or in a manner substantially different from the use to which it was put before alteration" makes adaptability for use and not actual use the test by which alterations are to be judged. *Ib.*, 112.

A building which, before the zoning law, was used or designed to be used by no more than one family is within the prohibition of a single-family ordinance if alterations have been so made that the building "would be reasonably suitable for the premises to be occupied by two separate tenants, one using the front door and one the side door." *Ib.*, 112.

Under a zoning ordinance which permits a "single-family detached dwelling" to be used for any "accessory use customarily incident" thereto the term "accessory use" does not include a proposed use merely because it is designed for the entertainment of relatives and friends. *Ib.*, 112.

### 3. BOARD OF ADJUSTMENT.

Where a zoning ordinance has created a Board of Adjustment with power to permit the alteration of an existing building for a use prohibited by the ordinance, the granting of an injunction against such use may be withheld until application for relief is seasonably made to that board. *Sullivan* v. *Corporation*, 112.

A report of a zoning commission advising that the erection of a certain kind of buildings be prohibited within the district defined by the report is a compliance with the zoning statute (P. L., *c.* 42, *s.* 53) requiring the submission of regulations in such report. *Stone* v. *Cray*, 483.

Under *s.* 54 of the act only the ordinance or vote may create and define what special exceptions shall exist and the Board of Adjustment (under *s.* 60, II)

has no power further than to apply the special exceptions defined and enumerated by the ordinance, or vote, to appropriate cases and conditions. *Ib.,* 483.

A construction of P. L., *c.* 42, *ss.* 54, 60, II which would give to the Board of Adjustment the right to create exceptions to an ordinance or vote would tend to vest the board with a legislative power delegated by the act (*s.* 48) only to the local legislative body. *Ib.,* 483.

The provision of *s.* 56 that the Board of Adjustment shall adopt rules "in accordance with the provisions of the ordinances," means such rules as relate to procedure before the board and that they shall conform to the ordinances in which provision therefor is unnecessary. *Ib.,* 483.

#### 4. REASONABLE EXCEPTIONS MAY BE MADE BY ORDINANCE.

The zoning act does not apply to exceptions which are reasonable as a matter of law and does not require that local legislation be passed to provide for them, but at most only requires that the local legislative body shall establish such exceptions as it deems and as may be reasonable and its action in such respect is not judicially reviewable. *Stone* v. *Cray,* 483.